

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-30-1997

# USX Corp v. The Penn Cent Corp

Precedential or Non-Precedential:

Docket
96-3705

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"USX Corp v. The Penn Cent Corp" (1997). *1997 Decisions.* Paper 255.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/255

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 30, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-3705

USX CORPORATION; BESSEMER AND LAKE ERIE
RAILROAD COMPANY

v.

THE PENN CENTRAL CORPORATION, now known as
American Premier Underwriters, Inc. as Successor in
interest to the Penn Central Transportation Company,

   Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 94-cv-00877)

Argued
July 21, 1997

Before: BECKER, MANSMANN and ROSENN,
Circuit Judges.

(Filed October 30, 1997)

   Thomas S. Kilbane, Esquire (Argued)
   Stacy D. Ballin, Esquire
   Squire, Sanders & Dempsey L.L.P.
   127 Public Square
   4900 Society Center
   Cleveland, Ohio 44114-1304

   Timothy W. Bergin, Esquire
   Squire, Sanders & Dempsey L.L.P.
   1201 Pennsylvania Avenue, N.W.
   P.O. Box 407
   Washington, DC 20044-0407

   David A. Lynch, Esquire
   Senior General Attorney
   USX Corporation
   600 Grant Street
   Pittsburgh, PA 15219-4776

   COUNSEL FOR APPELLEES

James J. Capra, Jr., Esquire
Donovan, Leisure, Newton & Irvine
30 Rockefeller Plaza
New York, NY 10112

Peter M. Fishbein, Esquire (Argued)
Karen E. Katzman, Esquire
Kaye, Scholer, Fierman, Hays
 & Handler, LLP
424 Park Avenue
New York, NY 10022

Michael L. Cioffi, Esquire
American Premier Underwriters, Inc.
One East Fourth Street
Cincinnati, OH 45202

Ralph A. Finizio, Esquire
Houston Harbaugh, P.C.
Two Chatham Center
Twelfth Floor
Pittsburgh, PA 15219-3463

 COUNSEL FOR APPELLANT

OPINION OF THE COURT

MANSMANN, Circuit Judge.

The separate litigations ensuing from certain railroads' participation in an antitrust conspiracy and thefinancial demise of the Penn Central Transportation Company now span three decades. See In the Matter of Penn Central Transportation Company, 458 F. Supp. 1364 (E.D. Pa. 1978); In Re Lower Lake Erie Iron Ore Antitrust Litigation, 759 F. Supp. 219 (E.D. Pa. 1991). Our decision today unfortunately perpetuates this longevity as we resolve only the issue of which jurisdiction adjudicates the issue of "who ultimately pays."

USX Corporation (USX) and Bessemer and Lake Erie Railroad (B&LE) filed state and federal actions against American Premier Underwriters, Inc. (American Premier), the reorganized successor of Penn Central, seeking indemnity and contribution of the approximately $600 million USX paid in satisfaction of judgments against B&LE in ten antitrust actions. American Premier urged that the actions be dismissed based upon provisions of the Final Consent Decree entered in the Penn Central bankruptcy

matter. The parties agreed to stay the indemnity and contribution proceedings pending a decision by the judge presiding over the bankruptcy matters as to the present action's viability in light of the Consent Decree.

Eventually, USX filed a notice of dismissal of the federal contribution and indemnity suit pursuant to Fed R. Civ. P. 41(a)(1). The district court, by adoption of a magistrate judge's report and recommendation, approved the dismissal. American Premier strongly disputes the propriety of the voluntary dismissal at the particular point of litigation in which it was granted. In its view, a summary judgment motion submitted by it prior to the filing of the notice of dismissal precluded a voluntary dismissal of the federal suit.

We will affirm the order of the district court. The specific chronology of the proceedings, the language of the relevant

orders, and the conduct of the parties necessitate a conclusion that at the time the voluntary notice of dismissal under Rule 41(a)(1) was filed, the status of the case was such that the notice was appropriate and the dismissal correctly granted.

I.

A. Background

Prior to 1989, B&LE was a wholly-owned subsidiary of USX. Pursuant to an indemnity agreement, USX paid nearly $600 million in satisfaction of antitrust judgments entered against B&LE in In Re Lower Lake Erie Iron Ore Antitrust Litigation, 998 F.2d 1144 (3d Cir. 1993).

The basis for the claims in the antitrust litigation was that conspiring railroads, including B&LE, acted to restrain trade in the movement of iron ore by ship across the Great Lakes to docks on the south shore of Lake Erie. Iron ore was traditionally transported in mud-like form in vessels which had to be unloaded using special cranes available only at railroad-owned docks. Some producers then began shipping iron ore in pellet form which permitted the ore to travel in self-unloading vessels. The ore could then be unloaded at private docks. This method of shipment did not require either the railroads' equipment or the railroads themselves -- trucks could now be used to carry the iron ore inland.

The railroads conspired to preserve their monopoly

position in transporting iron ore by preventing the development of this alternative transportation system for the iron ore. The conspiracy succeeded in delaying establishment of the self-unloading method and negatively impacted steel companies, private dock companies, trucking companies and a shipbuilder.

In the 1980's, twelve cases were filed under the Sherman Act and the Ohio Valentine Act by the injured industries against Penn Central, B&LE and several other railroads. The damages claimed varied: the steel companies lost the cost savings of the self-unloading transportation system;

4

the private dock companies were excluded from the iron ore unloading business; the trucking companies were foreclosed from carrying iron ore which could have been unloaded at the private docks; and the shipbuilder was denied the use of its vessels.

Three separate actions were also brought by a private dock owner, a self-unloading shipbuilder and a trucking company in the Northern District of Ohio (the Northern District litigations). In the Northern District cases, the claims of two of the plaintiffs against Penn Central were dismissed in January 1986 on the ground that they were discharged in the Penn Central reorganization proceeding. The Ohio district court then dismissed B&LE's cross-and third-party claims against Penn Central for indemnification under both federal and Ohio law and for contribution under federal law to the extent these claims were asserted against Penn Central as to alleged post-consummation conduct. Pinney Dock and Transportation Co. v. Penn Central Corp., 1982 W.L. 1914 (N.D. Ohio Nov. 9, 1982).

The remaining Northern District litigation and the actions brought by private dock owners, trucking companies and steel mills brought in the Eastern District of Pennsylvania were then consolidated. All the claims brought by the antitrust plaintiffs against Penn Central were dismissed.

After trial, B&LE was held liable to the various plaintiffs under both the Sherman Act and the Ohio Valentine Act for amounts totaling over $600 million. B&LE settled with four of the plaintiffs during the appeal process and paid two other judgments after appeal. B&LE also settled the claims brought against it by the two remaining plaintiffs in the Northern District litigations.

B. Present Action

B&LE then sought indemnity from American Premier with respect to the amounts paid to the antitrust plaintiffs. On May 26, B&LE filed a complaint in the Court of Common Pleas of Cuyahoga County, Ohio, claiming contribution from American Premier under Ohio law for its proportionate share of the antitrust damages. B&LE alternatively claimed entitlement to common law indemnity

for that portion of the damages assessed which B&LE asserted were attributable to Penn Central. In order to preserve claims exclusively within federal jurisdiction, B&LE also filed on the same day an action against American Premier in the United States District Court in the Western District of Pennsylvania.

On June 24, 1994, American Premier filed a petition before Judge Fullam of the United States District Court for the Eastern District of Pennsylvania, who had presided over the Penn Central reorganization and bankruptcy, seeking preliminary injunctive relief as well as an order directing B&LE to dismiss its claims against Penn Central as barred under the Consummation Order and Final Decree in the reorganization proceedings.

At a July 21, 1994, hearing on the petition, the parties orally entered into a stipulation spread on the record and recited by Judge Fullam: "[I]t is stipulated by counsel that ... all proceedings will be stayed as to B&LE until I dispose of this petition. This will not preclude the plaintiffs in either of these actions from amending their pleading if they want to do so."

The District Court for the Western District of Pennsylvania was advised of the stipulation by a written notice of stipulation filed August 4, 1994. That notice of stipulation, drafted and filed by American Premier, was not executed by B&LE nor signed by the district court.

On October 13, 1994, Judge Fullam decided the request for injunctive relief in Penn Central's favor and issued the following order:

> [B&LE] and [USX] are restrained and enjoined from asserting or prosecuting, or attempting to assert or prosecute their claims in USX Corporation v. The Penn Central Corporation No. 94-877 (W.D.Pa.), and USX Corporation v. The Penn Central Corporation No. 94-271/91 (C.P. Cuyahoga County, Ohio).

On the basis of Judge Fullam's decision, the District

Court for the Western District of Pennsylvania issued an order on November 2, 1994, directing the Clerk to withdraw the present action from the list of active cases and mark the action "closed."

B&LE moved for clarification and reconsideration of the November 2 order to insure that the district court had not dismissed the claims in its amended complaint so that it could pursue them if Judge Fullam's decision was reversed on appeal. B&LE also filed a precautionary notice of appeal with us from the November 2 order.

By order of December 28, 1994, the district court clarified its November 2 order:

> [I]t is hereby ordered that this court's order dated November 2, 1994 shall not be considered a dismissal or disposition of the above captioned action, and that, should further proceedings in the action become necessary or desirable, either party may initiate the same in the same manner as if this order had not been entered; provided however, that plaintiffs, USX Corporation and Bessemer and Lake Erie Railroad Company, shall not prosecute or attempt to assert or prosecute any claim in the above captioned action during the pendency of the order dated October 13, 1994 entered by the United States District Court for the Eastern District of Pennsylvania referred to in this court's November 2, 1994 order.

(Emphasis added.) Based on this clarifying language, B&LE withdrew its appeal to our court with respect to the November 2, 1994 order.

On December 12, 1995, we reversed Judge Fullam's October 13, 1994 order, holding that the claims brought by B&LE in this case arose post-consummation and hence were not discharged in the Penn Central bankruptcy. See In Re Penn Central Transportation Company, 71 F.3d 1113 (3d Cir. 1995). A petition for rehearing was denied on February 16, 1996.

On March 22, 1996, a motion to stay the mandate was entered. The parties were advised, pursuant to practice in our court, that if a petition for certiorari was filed within the time that the stay was entered, the mandate would not issue until the Supreme Court proceedings were concluded.

On May 28, 1996, the United States Supreme Court denied American Premier's petition for writ of certiorari.

Penn Central Underwriters, Inc. v. USX Corporation , 116 S.Ct. 1851 (1996). Our Clerk's office received notice of the denial on May 30, 1996, and our court's mandate was issued on June 3, 1996. On June 25, 1996, Judge Fullam entered an order denying American Premier's petition for dismissal in accordance with our mandate.

Prior to Judge Fullam's action on the mandate but after the denial of certiorari, on May 30, 1996, American Premier filed a motion for summary judgment for dismissal of all the claims in the amended complaint in the Western District action. Eight days later, on June 7, 1996, B&LE filed a notice of dismissal pursuant to Fed. R. Civ. P. 41(a)(1) or, alternatively, a motion to dismiss pursuant to Rule 41(a)(2). After being advised by court personnel that the case remained closed and that all recently filed motions should be withdrawn, on June 12, 1996, B&LE filed a motion to reopen the case for purposes of filing a notice of dismissal pursuant to Rule 41(a)(1). American Premier opposed the motion to reopen. Then, after Judge Fullam acted on our mandate on June 25, 1996, B&LE againfiled a notice of dismissal under Rule 41(a)(1).

A hearing on the summary judgment and dismissal motions was held before a magistrate judge. After briefing, the magistrate judge recommended that American Premier's motion for summary judgment be stricken and that B&LE's notice of dismissal without prejudice pursuant to Rule 41(a)(1) be upheld. The court reasoned that when American Premier's motion for summary judgment was filed, the Western District matter had been stayed by agreement of the parties. Because the stay was in effect when the motion for summary judgment was filed, that motion was a nullity. The magistrate judge further concluded that the Rule 41(a)(1) notice was the only motion properly before it and that a responsive pleading had not been filed. The magistrate judge therefore recommended that "the motion for summary judgment (Docket No. 14) be stricken, and that the motion to voluntarily dismiss the action without prejudice (Docket No. 25) be granted."1

_____

1. Docket No. 25 refers to B&LE's Rule 41(a)(1) notice of dismissal rather than its alternative Rule 41(a)(2) motion for dismissal, which is recorded at Docket No. 17.

On October 31, 1996, "after de novo review of the pleadings and documents in this case" the district court issued its order:

> It is hereby ordered that defendant's motion for summary judgment (Docket No. 14) is stricken, and that plaintiffs' motion for voluntary dismissal of this action pursuant to 41(a)(1) (Docket No. 25) is granted.

The Report and Recommendation of the Magistrate Judge was adopted as the opinion of the court. This appeal followed and we have jurisdiction pursuant to 28 U.S.C. S 1291.

II.

We must decide the point at which the stay of the Western District proceedings was dissolved. This determination enables us to identify which of the pleadings, if any, were appropriate for the court's consideration and, specifically, whether the Rule 41(a)(1) voluntary dismissal was filed timely.2

_____

In its order, the district court repeated the contradictory language of the magistrate judge's order, that a motion for voluntary dismissal pursuant to Rule 41(a)(1) was granted.

2. We do not address American Premier's second issue, whether dismissal by the court under Fed. R. Civ. P. 41(a)(2) was appropriate. While we realize that the language of the final order on appeal might indicate that the Rule 41(a)(2) motion was considered by the district court, examination of the docket and the proceedings convinces us that the Rule 41(a)(2) issue did not form the basis of the district court's decision.

In its order, the district court granted what it referred to as the "motion" to dismiss the action rather than the notice of dismissal under Rule 41(a)(1). However, the district court parenthetically referred to the "motion" as Docket No. 25 which is actually the June 25 "notice" of dismissal. Since the Docket No. 25 notice of dismissal was the only viable document before the court, it is apparent that the district court was granting the plaintiff's notice of dismissal under Rule 41(a)(1) and not its alternative motion under 41(a)(2).

We thus direct our attention to the terms of the stipulation which stayed these proceedings.

A consensual stipulation of the parties is "to be

interpreted according to the general principles of contract construction." Pittsburgh Terminal Corp. v. Baltimore & Ohio Railroad Co., 824 F.2d 249, 254 (3d Cir. 1987).

With these principles in mind, we must preliminarily determine whether the stipulation is ambiguous as a matter of law. Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 613 (3d Cir. 1995). A contract is ambiguous if, after hearing evidence presented by the parties, the court determines that objective indicia exists to support the view that "the terms of the contract are susceptible of different meanings." Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993). If the terms are then considered to be ambiguous, the factfinder must interpret the terms. Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980); Matter of Nelson Co., 959 F.2d 1260, 1263 (3d Cir. 1992). Here, the language utilized by Judge Fullam, in placing on the record the stipulation to stay, is subject to interpretation. Thus, we review the district court's findings concerning the meaning of the stipulation under the clearly erroneous standard.

III.

Federal Rule of Civil Procedure 41(a)(1) provides in pertinent part:

> [A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs
>
> . . . .

The essential issue, thus, is whether at the time Penn Central filed its motion for summary judgment the stay issued by Judge Fullam was still in effect. If the stay was in effect, the summary judgment motion was a nullity

10

which allowed B&LE to file a notice of dismissal under Rule 41(a)(1).

In deciding if the Rule 41(a)(1) voluntary dismissal should be granted, the district court concluded that the stay agreed to by the parties was not lifted until June 25, 1996, when Judge Fullam acted on our mandate and denied American Premier's petition seeking an order of dismissal of the action brought by B&LE. Persuading the district court

was the conduct of American Premier itself:

> Had American Premier believed that the stay was in
> effect only until Judge Fullam entered an order, the
> motion for summary judgment would have been filed at
> some point shortly after Judge Fullam entered his
> order in October 1994. Instead, Penn Central waited
> until the Third Circuit reversed Judge Fullam's order
> and the petition for certiorari was denied.

Our review of the chronology of the case3 and of the

_____

3. In summary fashion the relevant timeline is as follows:

5/26/94    - Complaint filed in Western District;
            - Amended 8/5/94

6/24/94    - Petition before Judge Fullam filed in Eastern District
             seeking to enjoin Western District action.

7/21/94    - Judge Fullam spreads stipulation on record: "all
             proceedings stayed as to B&LE until I dispose of
             petition."

10/13/94   - Judge Fullam decides: "B&LE restrained from
             prosecuting western district action."

11/2/94    - Western District Clerk marks action"closed."

12/28/94   - Western District issues clarifying order: closure of case
             not a dismissal, but B&LE cannot prosecute action
             "during pendency of order dated 10/13/94."

12/12/95   - We reverse Judge Fullam; Matter of Penn Central
             Transp. Co., 71 F.3d 1113 (3d Cir. 1995).

3/22/96    - Motion to stay mandate during Supreme Court
             proceedings.

5/28/96    - Supreme Court denies certiorari.

5/30/96    - American Premier motion for summary judgment in
             Western District action.

6/3/96     - We issue mandate.

6/7/96     - B&LE files notice of dismissal 41(a)(1) and, alternatively,
             motion for dismissal 41(a)(2).

11

interpretation of the language of the court's orders convinces us that the district court was correct. Certainly, until October 13, 1994, when Judge Fullam granted American Premier's petition to enjoin the Western District action, the stay remained in effect. In finding in favor of Penn Central, Judge Fullam ordered: "B&LE and USX are restrained and enjoined from asserting or prosecuting their claims in the Western District action."

We conclude that this order, by its terms, extended the stay. Although American Premier argues that the order only restrained B&LE, and not it, from continuing in the Western District action, we are not persuaded. If read as permitting American Premier to continue litigating the action, B&LE would have been precluded from responding. This could not have been the intent of Judge Fullam nor is it consistent with the general conduct of litigation.

The activity in the Western District also militates against a finding that the stay was dissolved. On November 2, 1994, based on Judge Fullam's order, the district court ordered the Clerk to withdraw the action from the list of active cases and mark the action "closed." At this point, further pleadings could not be filed. The court later clarified, on December 28, 1994, that marking the case closed was not tantamount to a dismissal of the case; its intent was to implement Judge Fullam's order that B&LE shall not prosecute any claim in the action during the pendency of the order dated October 13, 1994.

We must now determine at which point the Eastern District matter became final, allowing once again for the filing of pleadings in the Western District action. As noted, on May 28, the Supreme Court denied certiorari. Two days later, American Premier filed its motion for summary judgment. On June 7, B&LE filed its 41(a)(1) notice of dismissal and an alternative motion for dismissal under

_____

6/12/96   - After parties advised by Western District that case
            remained closed, B&LE files motion to reopen tofile
            41(a)(1) notice of dismissal. American Premier opposes.

6/25/96   - Judge Fullam acts on mandate. B&LEfiles another
            41(a)(1) notice (Docket #25).

12

Rule 41(a)(2). At this point, the parties were informed by the Clerk of the Western District that the case had remained closed and the recent filings had not been accepted. B&LE, on June 12, responded by requesting a

motion to reopen and for 41(a)(1) dismissal. The motion was opposed by Penn Central.

On June 25, 1996, Judge Fullam acted on the mandate from our court based upon the remand from the Supreme Court. The stay to which the parties had stipulated continued through the entire appellate process and terminated only when Judge Fullam acted on the mandate of our court and denied American Premier's request to enjoin B&LE from proceeding in the Western District. Later that day, B&LE filed its notice of dismissal under Rule 41(a)(1) in the Western District. This last notice of dismissal (Docket No. 25) was the only pleading filed after the Eastern District case was finally resolved, and therefore, it was the only motion viable in the Western District. Because this notice was filed "before service by the adverse party of an answer or of a motion for summary judgment" as required by Rule 41(a)(1), the district court did not err in its conclusion that the notice of dismissal under Rule 41(a)(1) was appropriate. Since no other pleadings were before it, it cannot be said that the district court abused its discretion in allowing the matter to be dismissed voluntarily.

IV.

We will, therefore, affirm the order of the district court.

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit

13