

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-7-2006

# USA v. Yusuf

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3019

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Yusuf" (2006). *2006 Decisions.* Paper 476.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/476

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

No. 05-3019

UNITED STATES OF AMERICA;
GOVERNMENT OF THE VIRGIN ISLANDS,

Appellants

v.

FATHI YUSUF MOHAMMED YUSUF, a/k/a FATHI YUSUF;
WALEED MOHAMMED HAMED, a/k/a WALLY HAMED;
WAHEED MOHAMMED HAMED, a/k/a WILLIE YUSUF;
MAHER FATHI YUSUF, a/k/a MIKE YUSUF;
ISAM MOHAMAD YOUSUF, a/k/a SAM YOUSEF;
UNITED CORPORATION, d/b/a PLAZA EXTRA;
NEJEH FATHI YUSUF

On Appeal from the District Court
of the Virgin Islands
(D.C. Criminal No. 05-cr-00015)
District Judge: Hon. Raymond L. Finch, Chief Judge

Argued May 11, 2006

BEFORE: FISHER, COWEN and ROTH,* Circuit Judges

(Filed September 7, 2006)

*The Honorable Jane R. Roth assumed senior status on May 31, 2006.

Thomas Pinder, Esq. (Argued)
United States Department of Justice
Criminal Division
1400 New York Avenue, N.W.
Washington, DC 20005

       Counsel for Appellants

Henry C. Smock, Esq.
Smock Law Offices
Palm Passage, Suite B18-23
P.O. Box 1498
Charlotte Amalie, St. Thomas
USVI, 00804

       Counsel for Appellee Fathi Yusuf Mohammed Yusuf

Gordon C. Rhea, Esq. (Argued on behalf of all Appellees)
Richardson, Patrick, Westbrook &
  Brickman
1037 Chuck Dawley Boulevard
Building A
Mount Pleasant, SC 29464

Randall P. Andreozzi, Esq.
Marcus, Andreozzi & Fickess
6255 Sheridan Way
Suite 302
Williamsville, NY 14221

       Counsel for Appellee Waleed Mohammed Hamed

Pamela L. Colon, Esq.
27 & 28 King Cross Street
Christiansted, St. Croix
USVI, 00820

       Counsel for Appellee Waheed Mohammed Hamed

John K. Dema, Esq.
Law Offices of John K. Dema
1236 Strand Street, Suite 103
Christiansted, St. Croix
USVI, 00820-5008

      Counsel for Appellee Maher Fathi Yusuf

Thomas Alkon, Esq.
Alkon & Meaney
2115 Queen Street, Suite 101
Christiansted, St. Croix
USVI, 00820

      Counsel for Appellee United Corporation, d/b/a Plaza Extra

Derek M. Hodge, Esq.
Mackay & Hodge
P.O. Box 303678
Charlotte Amalie, St. Thomas
USVI, 00803

      Counsel for Appellee Nejeh Fathi Yusuf

---

OPINION

---

COWEN, <u>Circuit Judge</u>.

The United States appeals the District Court's order granting the individual defendants' motion seeking a release of $1.5 million of United Corporation's restrained assets to pay the individual defendants' attorneys' fees. For the reasons given below, we will vacate the order and remand the case for further proceedings.

I.

Because we write only for the benefit of the parties, we recite only those facts necessary to our analysis. On September 18, 2003, a federal grand jury returned an indictment charging defendants United Corporation, Fathi Yusuf, Waleed Hamed, Waheed Hamed, Maher Yusuf, and Isam Yousof with various offenses, including conspiracy to commit money laundering under 18 U.S.C. § 1956(h). The indictment also alleged criminal forfeiture of certain property of the defendants, under 18 U.S.C. § 982 and 21 U.S.C. § 853.

On the same date, the government filed two *ex parte* motions for temporary restraining orders under 21 U.S.C. § 853 and 14 U.S.C. § 606, respectively, to preserve the availability of assets which, in the event of conviction, would be subject to forfeiture. The District Court granted the motions and entered the Temporary Retraining Orders.

In December 2003, defendants Fathi Yusuf, Maher Yusuf, and Nejeh Yusuf,[1] and non-defendant shareholders Fawzia Yusuf and Yusuf Yusuf, filed a motion requesting a modification of the Temporary Restraining Orders and a release of funds in order to pay their legal defense. Before the District Court reached a decision on the motion, the government, the defendants, and the non-defendant shareholders entered into an Agreed Amendment to Restraining Order ("Agreed Amendment").

The Agreed Amendment authorized United Corporation to "use corporate funds in an amount up to $2.5 million for the exclusive purpose of paying reasonable fees to

---

[1] The grand jury returned a superseding indictment that added Nejeh Yusuf as a defendant in various counts.

4

counsel of record and agents of counsel of record, including experts, investigators, [and] accountants, in connection with the legal defense of defendants United, Fathi Yusuf, Maher F. Yusuf, Nejeh F. Yusuf, Waleed M. Hamed, and Waheed M. Hamed in the above-styled criminal action pending in the District of the Virgin Islands." (Agreed Amendment ¶ 3.) The Agreed Amendment further provided that "[t]he defendants listed in this paragraph may request additional funds upon motion to the Court; *the government reserves the right to oppose any such request*." (*Id.*) (emphasis added).

On January 13, 2005, the individual defendants filed a motion seeking a release of an additional $1.5 million for trial preparation and litigation expenses, including attorneys' fees and expert fees. The government opposed the motion, arguing that defendants had not demonstrated that they had no alternate sources of funds available.

In a Report and Recommendation, a United States Magistrate Judge recommended to the District Court that the individual defendants' motion be granted. The magistrate judge reasoned that the funds authorized under the Agreed Amendment had been spent appropriately and were virtually depleted. In addition, the magistrate judge noted that a release of an additional $1.5 million would not significantly deplete United Corporation's cash flow and retained earnings.

Following a hearing, the District Court entered an order on April 25, 2005, adopting the magistrate judge's recommendation and granting the defendants' January 13, 2005 motion for a release of $1.5 million in funds. "[A]lthough the Agreed Amendment specifically provide[d] that the Government may oppose a request for additional funds,

5

the [District] Court construe[d] the Agreed Amendment as permitting the Government to oppose such a request only upon grounds that it did not raise previous to entering into the Agreed Amendment." (Memorandum Opinion at 5.) Because the government had previously raised the issue of the defendants' alleged failure to demonstrate a lack of other sources of funds to pay their legal fees, the District Court concluded that the government had now waived that issue. In addition, the District Court agreed with the magistrate judge that the funds advanced under the Agreed Amendment had been spent appropriately and were virtually depleted.

The government now appeals the District Court's order permitting a release of $1.5 million in funds subject to the Temporary Restraining Orders.

## II.

We have interlocutory jurisdiction over this matter under 28 U.S.C. § 1292. We review a district court's construction of a stipulation *de novo*. *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 269 (3d Cir. 2002). We review a district court's interpretation of a stipulation, as well as its underlying factual findings, under a clearly erroneous standard. *Id.*; *USX Corp. v. Penn Cent. Corp.*, 130 F.3d 562, 566 (3d Cir. 1997).

## III.

The government contends that the District Court erred in concluding that the government had waived its right to oppose the individual defendants' motion for a release of $1.5 million in restrained assets. The District Court based its waiver determination on its construction of the language in the Agreed Amendment. Because we conclude that the

6

plain and unambiguous language of the Agreed Amendment is not susceptible to the

meaning adopted by the District Court, we agree with the government that there was no

waiver.

We have stated that "[a] consensual stipulation of the parties is to be interpreted

according to the general principles of contract construction." *USX Corp.*, 130 F.3d at 566

 (citations and internal quotation marks omitted).  In this case, because the government is

a party to the agreement, we apply the federal common law of contract.  *See Boyle v.*

*United Techs. Corp.*, 487 U.S. 500, 504 (1988) ("[The Supreme Court] ha[s] held that

obligations to and rights of the United States under its contracts are governed exclusively

by federal law."); *see also Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411 (1947)

("It is customary, where Congress has not adopted a different standard, to apply to the

construction of government contracts the principles of general contract law.").[2]

Under the federal common law of contract, we apply the following steps to

identify the existence, if any, of a contractual ambiguity:

> To decide whether a contract is ambiguous, we do not simply determine
> whether, from our point of view, the language is clear.  Rather, we "hear the
> proffer of the parties and determine if there [are] objective indicia that, from
> the linguistic reference point of the parties, the terms of the contract are
> susceptible of different meanings." *Sheet Metal Workers [v. 2300 Group,*
> *Inc.]*, 949 F.2d [1274] at 1284 [3d Cir. 1991] (brackets in original)
> (quoting *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001,
> 1011 (3d Cir. 1980)).  Before making a finding concerning the existence or

---

[2] Although neither the government nor the defendants has expressly addressed the
issue of what law governs the construction of the Agreed Amendment, the parties
uniformly cite to federal case law in their briefs.

absence of ambiguity, we consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. *Id.*; *[International Union v.] Mack Trucks*, 917 F.2d [107] at 111 [3d Cir. 1990]; *see also* Restatement (Second) of Contracts § 223 cmt. b (1981) ("There is no requirement that an agreement be ambiguous before evidence of a course of dealing can be shown···."). Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning. *Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993).

*In re New Valley Corp.*, 89 F.3d 143, 150 (3d Cir. 1996). As one of our sister courts has stated, "[i]f a contract is not open to any other reasonable interpretations, and is therefore unambiguous, then the written words of the contract must dictate the disposition of a dispute involving that contract." *Funeral Fin. Sys. v. United States*, 234 F.3d 1015, 1018 (7th Cir. 2000) (applying federal common law of contract).

In this case, the District Court determined that the Agreed Amendment was susceptible to an interpretation that limited the government's right to oppose a release of additional restrained funds. In the District Court's view, the parties entered into the Agreed Amendment to forego a judicial determination on the issues they had raised before entering into the agreement. Because the government had previously raised the issue of the defendants' alleged failure to demonstrate a lack of other sources of funds to pay their legal fees, the District Court concluded that the government could not reassert the issue. Thus, "the [District] Court construe[d] the Agreed Amendment as permitting the Government to oppose [] a request [for additional funds] only upon grounds that it did not raise previous to entering into the Agreed Amendment." (Memorandum Opinion at

5.)

After reviewing the language of the Agreed Amendment, we cannot agree with the District Court's construction of the contract. The Agreed Amendment plainly states that "the government reserves the right to oppose any such request [for additional funds]." (Agreed Amendment ¶ 3.) The government's right is expressed in broad, unqualified terms. There is no language in this provision, or any other part of the parties' agreement, that could reasonably be construed to limit the grounds upon which the government might oppose a defense request for additional funds. For example, this provision does not suffer from a lack of definiteness or contain vague or obscure words subject to a double meaning. *See Landtect Corp. v. State Mut. Life Assurance Co. of Am.*, 605 F.2d 75, 80 (3d Cir. 1979) ("An ambiguous contract is one capable of being understood in more senses than one; an agreement obscure in meaning through indefiniteness of expression, or having a double meaning . . . ." (citation and internal quotation marks omitted)). Rather, the provision is reasonably understood as having only one meaning, namely, that the government has an unqualified right to oppose a defense request for a release of restrained funds. Thus, we conclude that the language in the Agreed Amendment is not reasonably susceptible to the restrictive meaning adopted by the District Court.

To be clear, we do not intimate that the District Court erred in merely considering the parties' negotiations in construing the terms of the parties' agreement. In determining whether a contract is ambiguous, a district court may consider extrinsic evidence in support of a party's proposed interpretation. *See In re New Valley Corp*., 89 F.3d at 150.

9

However, a district court cannot rest its ambiguity finding on extrinsic evidence alone. The district court must consider the extrinsic evidence in conjunction with the contract language itself. Here, the extrinsic evidence offered by the individual defendants does not show "from the linguistic reference point of the parties, [that] the terms of the contract are susceptible of different meanings." *Sheet Metal Workers*, 949 F.2d at 1284 (quoting *Mellon Bank,* 619 F.2d at 1011).

Based upon the foregoing, we conclude that the government did not waive any aspect of its right to object to defendants' motion for additional funds. Accordingly, we will vacate the District Court's order dated April 25, 2005, and remand this case to the District Court to consider defendants' motion on the merits.[3]

On remand, the District Court should consider whether a due process hearing is required in accordance with the framework set forth in *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998).[4] Under that framework, a due process hearing is required if the defendant: (1) "demonstrate[s] to the court's satisfaction that she has no assets, other than those restrained," and (2) "make[s] a prima facie showing of a bona fide reason to

---

[3] We remind the District Court that "[a]lthough the Sixth Amendment grants a defendant the right to obtain counsel of his choice, this right 'does not extend beyond the individual's right to spend his own legitimate, nonforfeitable assets.'" *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2006) (quoting *United States v. Farmer*, 274 F.3d 800, 802 (4th Cir. 2001)).

[4] In their briefs, both the individual defendants and the government cite, with approval, to all or part of the *Jones* framework. We believe that the framework outlined in *Jones* achieves a proper balance between the private interests of the defendants in their Sixth Amendment right of counsel and the government's interest in preserving forfeitable assets. *See* 160 F.3d at 645-47.

believe the grand jury erred in determining that the restrained assets constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." *Id.* (citation, internal quotation marks, and brackets omitted); *accord United States v. Farmer*, 274 F.3d 800, 803 (4th Cir. 2001) ("[D]ue process requires a pretrial adversary hearing when a defendant claims that a portion of the assets restrained pursuant to criminal forfeiture statutes are untainted and that he has no other funds from which to secure the counsel of his choice.").

If the individual defendants satisfy these initial burdens, the District Court should then conduct an adversarial hearing at which "the government must establish probable cause to believe that the restrained assets are traceable to the underlying offense." *Jones*, 160 F.3d at 647.[5] The post-restraint inquiry at the adversarial hearing is limited to the traceability of the restrained assets, and, thus, the government need not reestablish probable cause to believe that defendants are guilty of the underlying offense. *Id.* at 648. At the hearing, the District Court may receive and consider evidence and information that would otherwise be admissible under the Federal Rules of Evidence. *Id*. at 647-48. If the government establishes probable cause concerning the traceability of the assets, the District Court must deny the individual defendants' motion. If the government cannot

---

[5] We reject the government's suggestion that the grand jury's determination of probable cause is alone sufficient to show that funds subject to restraint are traceable to the offenses charged. As noted in *Jones*, a grand jury investigation is non-adversarial in nature and thus does not afford the procedural protections required of due process. 160 F.3d at 645-46.

establish probable cause, the individual defendants are entitled to a release of funds for the payment of their legal defense.

We will vacate the District Court's order dated April 25, 2005, and remand this case to the District Court for further proceedings consistent with this opinion.