**132**

In re TEAMSTERS INDUSTRIAL EM-
PLOYEES WELFARE FUND; Team-
sters Industrial Employees Pension
Fund; and The Trustees of the Team-
sters Industrial Employees Welfare
Fund and Teamsters Industrial Em-
ployees Pension Fund

v.

ROLLS–ROYCE MOTOR CARS,
INC., Appellant,

No. 92–5213.

United States Court of Appeals,
Third Circuit.

Argued Jan. 25, 1993.
Decided March 22, 1993.

Joseph L. Buckley (argued), Sills Cummis Zuckerman Radin Tischman Epstein & Gross, P.A., Newark, NJ, for appellant.

Joseph S. Fine (argued), Reitman Parsonnet & Duggan, Newark, NJ, for appellee.

Before: STAPLETON and COWEN, Circuit Judges and DuBOIS, District Judge [*]

## OPINION OF THE COURT

COWEN, Circuit Judge.

The Teamsters Industrial Employees Welfare Fund, the Teamsters Industrial Employees Pension Fund, and the Trustees of the Teamsters Industrial Employees Welfare Fund and Teamsters Industrial Employees Pension Fund (collectively "the Funds") filed suit against Rolls–Royce Motor Cars, Inc. ("Rolls–Royce") seeking to collect delinquent welfare and pension fund contributions for Rolls–Royce's probationary employees. The principal question on appeal is whether the collective bargaining agreement provision requiring Rolls–Royce to contribute to the Funds on behalf of each employee mandates payments for new employees during their sixty-day trial period. We hold that the provision's scope of coverage is ambiguous. After considering the bargaining history and past practice of the parties in addition to the contractual

[*] The Honorable Jan E. DuBois, United States District Judge of the Eastern District of Pennsylvania, sitting by designation.

language, we interpret the collective bargaining agreement to require that Rolls–Royce contribute to the Funds only on behalf of regular employees who have worked in excess of sixty days. We therefore will reverse the grant of summary judgment in favor of the Funds and will instruct the district court to grant summary judgment in favor of Rolls–Royce.

## I. FACTUAL AND PROCEDURAL HISTORY

The underlying facts are undisputed. On April 4, 1984, Rolls–Royce and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO, Local Union # 560 ("Local 560" or "Union") signed a collective bargaining agreement. Rolls–Royce and the Union subsequently negotiated and signed new collective bargaining agreements approximately every two years, but all provisions relevant to this case contained identical language from 1984 to the present.

Article II(2)(b) of the collective bargaining agreement provides that new employees may be disciplined or discharged with or without cause for a trial period of sixty days. New employees must become members of Local 560 by the sixty-first day of their employment at which time they are "deemed to be regular employees covered by this Agreement." App. at 31–32. Article II(2)(b) further states that trial period employees will "sometimes [be] referred to as 'probationary employees'." App. at 31.

Article XX(a) states that Rolls–Royce will contribute to the Funds on behalf of "each employee." App. at 57. From 1984 to the present, Rolls–Royce consistently contributed to the Funds only for regular workers. In December of 1989, the Funds filed suit against Rolls–Royce, pursuant to section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145 (1988)[1], seeking delinquent contributions on behalf of all probationary em-

ployees. The Funds also sought access to company records and books allegedly necessary to ascertain Rolls–Royce's liability. The Funds argued that "each employee," as used in Article XX(a), unambiguously includes probationary employees because other articles in the collective bargaining agreement use the narrower terms "regular" or "probationary" employees when the provision applies to only a subclass of all workers.

Rolls–Royce asserted that the scope of coverage of Article XX(a) is ambiguous because the agreement utilizes the broad term "employee" in provisions that necessarily apply only to regular employees. To support its contention that it is unclear whether the language of Article XX(a) includes probationary employees, Rolls–Royce submitted the affidavit of its secretary and general counsel, William Kennedy. Kennedy's uncontradicted affidavit states that Rolls–Royce never contributed to the Funds for probationary employees. Although it was aware of Rolls–Royce's failure to contribute for probationary employees, Local 560 never raised this issue at collective bargaining negotiations or at any other time before the filing of this suit, and never filed a grievance requesting that Rolls–Royce make such contributions. While receiving payments from Rolls–Royce for over five years, the Funds also never demanded contributions on behalf of probationary employees.

The parties filed cross-motions for summary judgment. The bargaining history, as set forth in the Kennedy affidavit, was undisputed. Ignoring the prior practice of the parties, the district court found that the contractual term "each employee" unambiguously encompassed both regular and probationary employees. The district court therefore granted summary judgment in favor of the Funds and ordered Rolls–Royce to produce various books and records for an audit by the Funds. Rolls–Royce appeals this order.

---

**1.** Section 515 of ERISA provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

## II. DISCUSSION

■ We have jurisdiction pursuant to 28 U.S.C. § 1291 (1988) and exercise plenary review over the district court's order granting summary judgment. *Philadelphia and Reading Corp. v. United States,* 944 F.2d 1063, 1070 (3d Cir.1991). We apply the same test as the district court— summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Both parties agree that all relevant facts are undisputed. The only remaining issue involves the interpretation of the legal obligations arising out of the collective bargaining agreement. The district court found that Article XX(a) of the collective bargaining agreement unambiguously requires Rolls–Royce to make contributions on behalf of probationary employees. The determination of whether a contract term is clear or ambiguous is a pure question of law requiring plenary review. *Clement v. Consolidated Rail Corp.,* 963 F.2d 599, 600 (3d Cir.1992); *Taylor v. Continental Group Change in Control Severance Pay Plan,* 933 F.2d 1227, 1232 (3d Cir.1991); *International Union, United Auto., Aerospace and Agric. Implement Workers v. Mack Trucks, Inc.,* 917 F.2d 107, 111 (3d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).[2]

■ Although federal law governs the construction of collective bargaining agreements, *see Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957), traditional rules of contract interpretation apply when not inconsistent with federal labor law, *see Sheet Metal Workers, Local 19 v. 2300*

*Group, Inc.,* 949 F.2d 1274, 1284 (3d Cir. 1991); *Mack Trucks,* 917 F.2d at 111. To decide whether a contract is ambiguous, we do not simply determine whether, from our point of view, the language is clear. Rather, we "hear the proffer of the parties and determine if there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." *Sheet Metal Workers,* 949 F.2d at 1284 (brackets in original) (quoting *Mellon bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1011 (3d Cir.1980)). Before making a finding concerning the existence or absence of ambiguity, we consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. *Id.; Mack Trucks,* 917 F.2d at 111; *see also* Restatement (Second) of Contracts § 223 cmt. b (1981) ("There is no requirement that an agreement be ambiguous before evidence of a course of dealing can be shown...."). Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning. These basic principles of contract construction are not inconsistent with federal labor policy.

■ The collective bargaining agreement requires Rolls–Royce to make contributions for "each employee."[3] The definition of employees covered by the agreement is "all warehouse employees," with exceptions not relevant here. App. at 29. At first glance, Article XX(a) appears to cover both regular and probationary employees. After examining the structure of

---

**2.** The Funds urge us to review the district court's construction of the collective bargaining agreement for clear error. The Funds base this argument on the false assumption that the district court made a factual determination when it decided that the collective bargaining agreement was unambiguous. The interpretation of an ambiguous contractual provision is a factual question. *See Mack Trucks,* 917 F.2d at 112 (citing *Ram Constr. Co. v. American States Ins. Co.,* 749 F.2d 1049, 1053 (3d Cir.1984)). In contrast, the threshold inquiry as to whether contract terms are ambiguous is a legal question. *Id.* at 111. Moreover, clear error review

is never appropriate in the procedural context of a summary judgment motion when all facts are taken in the light most favorable to the nonmoving party. *See Electronic Lab. Supply Co. v. Cullen,* 977 F.2d 798, 799 (3d Cir.1992).

**3.** Article XX(a) of the collective bargaining agreement provides:

Contributions for welfare and pension shall be paid by the Employer for each employee for a maximum of ... forty (40) hours per week per employee.

App. at 57.

the entire contract and the parties' course of conduct, however, we hold that whether this clause includes probationary employees is ambiguous. The distinction between probationary employees and regular employees is created by Article II(2)(b) of the collective bargaining agreement. Article II(2)(b) states:

> All new employees engaged by the Employer shall be deemed for the first sixty (60) days of their employment to be engaged for a trial period. All such new employees (hereinafter sometimes referred to as "probationary employees") may be disciplined, laid off or discharged with or without cause in the sole discretion of the Employer during such trial period.... After the said trial period, all such employees shall be deemed to be regular employees covered by this Agreement....

App. at 31–32.

Several clauses in the agreement specifically mandate different treatment of probationary employees and regular employees. Article II(2)(c) requires the employer to deduct union dues from the wages of regular employees, Article X provides that regular employees will be paid every other week on Fridays for the pay period ending on that Friday, and Article XXV guarantees that a regular employee will be paid while serving jury duty. Additionally, Article VII prohibits discharges without cause, but has an exception for probationary employees. The Funds argue that because the agreement distinguishes between probationary and regular employees in certain provisions, the unqualified term "employee" must include both categories of workers.

To counter the construction advocated by the Funds, Rolls–Royce points to other provisions in the collective bargaining agreement that apply by their terms to all employees, but must refer only to regular workers. For example, Article IV(4)(b) states that "[a]ny employee who is absent because of proven illness or disability of not more than six (6) months duration shall maintain his seniority." App. at 35–36. The term "any employee" necessarily excludes probationary employees because probationary employees do not achieve seniority until the sixty-first day of their employment when they become regular employees.

Further, Article II(2)(b) states that "[a]fter the said trial period, [probationary] employees shall be deemed to be regular employees *covered by this Agreement.*" App. at 31–32 (emphasis added). The natural inference to be drawn from this provision is that employees are not even covered by the collective bargaining agreement, let alone entitled to welfare and pension fund contributions on their behalf, until after the trial period. The fact that union membership is obligatory only for regular employees reinforces this inference. Rolls–Royce buttresses its interpretation with evidence that for over five years, it never made a single contribution for a probationary employee. Moreover, before filing this suit, neither Local 560 nor the Funds ever requested that Rolls–Royce make such payments.

■■■■ Because some provisions in the collective bargaining agreement specifically use the terms "probationary" or "regular" employees, while other clauses utilize the broad term "employee" yet necessarily apply only to regular employees, we find the term "each employee" in Article XX(a) to be ambiguous.[4] To interpret an ambiguous contractual provision, a fact-finder must attempt to discover what the contracting parties, Rolls–Royce and Local 560, intended the clause to mean. *See John F. Harkins Co. v. Waldinger Corp.,* 796 F.2d 657, 659–60 (3d Cir.1986), *cert.*

---

4. The Funds reliance on the unpublished decision of *Teamsters Industrial Employees Welfare Fund v. Halper Brothers,* No. 89–1963 (D.N.J. Feb. 5, 1991), is misplaced. In *Halper Brothers,* the district court found that a provision requiring the employer contribute to specified funds for "each employee" unambiguously applied to both union and non-union employees. The collective bargaining agreement at issue, however, contained no distinctions between union and non-union employees. This case is very different because the collective bargaining agreement defines a subclass of workers, probationary employees, and often treats them very differently from regular workers. Indeed, Article II(2)(b) implies that probationary employees are not even covered by the agreement.

*denied,* 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987). To provide a measure of predictability for contracting parties, the objective manifestations of intent, rather than the unknowable subjective intent of the parties, govern this inquiry. *See Gulf Oil Corp. v. Commissioner of Internal Revenue,* 914 F.2d 396, 407 (3d Cir.1990).

 Ordinarily, we would remand the issue of intent to the district court for a factual finding to be made. *See Alexander v. Primerica Holdings, Inc.,* 967 F.2d 90, 96 (3d Cir.1992) (interpretation of ERISA plan to ascertain intent of employer and union is factual question); *Painewebber Inc. v. Hartmann,* 921 F.2d 507, 510 (3d Cir.1990) (interpretation of contractual language to discern contractual intent is a question of fact); *John F. Harkins Co. v. Waldinger Corp.,* 796 F.2d 657, 659–60 (3d Cir.1986) (same), *cert. denied,* 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987). In this case, however, overwhelming uncontradicted evidence demonstrates that both Rolls–Royce and the Union did not intend Rolls–Royce to contribute on behalf of probationary employees. A rational fact-finder could not conclude otherwise. The intention of the parties, therefore, is not a *genuine* issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (no genuine factual issue if rational trier of fact could not find for non-moving party); *accord United States v. One 107.9 Acre Parcel of Land,* 898 F.2d 396, 398 (3d Cir.1990). The absence of a genuine factual dispute obviates the need for further proceedings on remand, and we will direct the entry of summary judgment in favor of Rolls–Royce.

 The past dealings of contracting parties pursuant to an agreement are probative of the parties' intent. *See* Restatement (Second) of Contracts § 223(2) (1981); *Cities of Campbell v. Federal Energy Regulatory Comm'n,* 770 F.2d 1180, 1191 (D.C.Cir.1985). Evidence of a course of conduct is particularly compelling when it occurs over a substantial time period. *Old Colony Trust Co. v. City of Omaha,* 230 U.S. 100, 118, 33 S.Ct. 967, 972, 57 L.Ed. 1410 (1913) ("the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence"). For over five years while the collective bargaining agreement was in effect, Rolls–Royce did not contribute to the Funds for probationary employees. Although it was aware that Rolls–Royce made payments to the Funds only for regular employees, Local 560 never requested that Rolls–Royce contribute for its trial-period employees. Indeed, Local 560 renegotiated the collective bargaining agreement on two separate occasions during this period and never mentioned that Rolls–Royce should make such contributions. The actions of both contracting parties are consistent with a mutual intention that Rolls–Royce not contribute for probationary employees.

 The Funds' conduct also reflects their understanding that the collective bargaining agreement did not require payments for probationary employees. ERISA imposes a number of fiduciary duties on the Funds. *See Agathos v. Starlite Motel,* 977 F.2d 1500, 1507 (3d Cir. 1992). They must "take steps to identify all participants and beneficiaries, so that the trustees can make them aware of their status and rights," *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 572, 105 S.Ct. 2833, 2841, 86 L.Ed.2d 447 (1985), and must "notify the pensioner of his employer's failure to contribute to the fund as required by the pension agreement," *Rosen v. Hotel and Restaurant Employees & Bartenders Union,* 637 F.2d 592, 599–600 (3d Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). While claiming to have been entitled to payments for probationary employees since 1984, the Funds never demanded that Rolls–Royce make such payments until 1989, when this suit was filed. Nor did they contact a single probationary employee concerning Rolls–Royce's failure to fulfill its alleged obligation.

The Funds argue that as third party beneficiaries of the collective bargaining agreement, they may enforce the agreement as written notwithstanding any oral modifications made by Rolls–Royce and the Union. While this is true, *see Abbate v. Browning–Ferris Indus., Inc.*, 767 F.2d 52, 55 (3d Cir.1985), it is irrelevant. Rolls–Royce does not argue that the collective bargaining agreement created an obligation which an oral understanding or course of conduct extinguished. Rolls–Royce asserts that the written agreement never required it to make contributions for probationary employees. Rolls–Royce proffered evidence of the practice of the parties over the years to shed light on the contracting parties' intention when they signed the ambiguous collective bargaining agreement. It did not proffer the evidence to demonstrate a subsequent modification of an existing responsibility.

To prevent union corruption and protect employee expectations, multiemployer funds are immune from many contract defenses that would bar unions from enforcing a collective bargaining agreement. *See, e.g., Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314–16 (2d Cir.) (abandonment and union lack of majority support), *cert. denied*, 498 U.S. 982, 111 S.Ct. 511, 112 L.Ed.2d 524 (1990); *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 775 (9th Cir.1986) (fraud in the inducement), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987). The special status of multiemployer funds allows them to rely on the unambiguous written agreements presented to them. *See Benson*, 907 F.2d at 313–14. Although a variety of contract defenses would not preclude the Funds from enforcing their right to collect payments pursuant to the collective bargaining agreement, the Funds are not entitled to enforce a nonexistent contractual obligation.

### III. *CONCLUSION*

For the foregoing reasons, we will reverse the grant of summary judgment in favor of the Funds and remand the matter to the district court with instructions to grant summary judgment in favor of Rolls–Royce.