

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-17-2001

# Einhorn v. Fleming Foods of PA, Inc.

Precedential or Non-Precedential:

Docket 00-2549

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Einhorn v. Fleming Foods of PA, Inc." (2001). *2001 Decisions*. Paper 154.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/154

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 17, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2549

WILLIAM J. EINHORN, ADMINISTRATOR OF THE
TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA
& VICINITY and THE TEAMSTERS HEALTH AND
WELFARE FUND OF PHILADELPHIA & VICINITY,

      Appellant

v.

FLEMING FOODS OF PENNSYLVANIA, INC.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(Dist. Court No. 99-cv-04328)
District Court Judge: Clarence C. Newcomer

Argued: March 7, 2001

Before: ALITO, McKEE, Circuit Judges , and KRAVITCH,
Senior Circuit Judge[1]

(Opinion Filed: July 17, 2001)

_____

1. Honorable Phyllis A. Kravitch, United States Court of Appeals for the
Eleventh Circuit, sitting by designation.

      FRANK C. SABATINO (argued)
      JAMES D. CRAWFORD
      JONATHAN R. NADLER
      Schnader, Harrison, Segal &
       Lewis, LLP
      1600 Market Street, Suite 3600
      Philadelphia, PA 19103

      Counsel for Appellant

      JEANNE L. BAKKER (argued)
      HOWARD J. BASHMAN
      Montgomery, McCracken, Walker &
       Rhoads, LLP
      123 South Broad Street
      Philadelphia, PA 19109

      Counsel for Appellee

OPINION OF THE COURT

ALITO, Circuit Judge:

Appellant William J. Einhorn br ought this action under Section 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. S 1145, to collect contributions allegedly owed by Appellee Fleming Foods of Pennsylvania ("Fleming") to multi-employer pension and welfare funds that Einhorn administers. The District Court granted summary judgment for Fleming. Because we conclude that the relevant language of the collective bar gaining agreements is ambiguous, we reverse the District Court's grant of summary judgment and remand.

I.

Until 1997, Fleming employed approximately 163 drivers and 13 mechanics as part of its food distribution operations. It entered into separate collective bargaining agreements ("CBAs") with the drivers ("Drivers' CBA") and the mechanics ("Mechanics' CBA"). The Drivers' CBA was in effect from July 1, 1994, to June 30, 1997, and the Mechanics' CBA was in effect from October 1, 1994, to

September 30, 1997. Both CBA's required Fleming to make contributions to the Teamsters Pension Fund of Philadelphia and Vicinity ("Pension Fund") and the Teamsters Health & Welfare Fund of Philadelphia and Vicinity ("HW Fund"). Fleming's contribution obligations, which were the same for both funds, wer e specified in the CBA's:

> Contributions to the Fund . . . shall be made for each seniority associate for each day worked, or if not worked, paid for pursuant to the terms of this Agreement covering holidays, vacations and paid sick leave (not worked) to a maximum of eight (8) hours per day or forty (40) hours per week.

App. 70, 84 (Drivers' CBA, art. 9, 25); App. 124-25 (Mechanics' CBA, art. 32, 33).

In May 1997, Fleming entered into an agr eement with Transervice Lease Corporation ("Transervice") under which Fleming agreed to "outsource" its drivers and mechanics to Transervice. Pursuant to this agreement, Fleming terminated its drivers and mechanics when their CBA's expired -- on June 30, 1997, for the drivers and on September 30, 1997, for the mechanics. Transervice became obligated to contribute to the Funds on behalf of the drivers and mechanics once they became T ranservice employees.

In anticipation of terminating the employees, Fleming contacted Frank Gillen, the president of the employees' union, and offered to engage in "ef fects" bargaining. The parties eventually agreed that Fleming would pay the drivers for all of the unused vacation benefits, personal days, and sick leave that they had earned as of the day of their termination. In addition, Fleming agr eed to pay the drivers for the July 4th holiday (which occurr ed after the termination of the Drivers' CBA) and for five additional unearned sick days. The parties also engaged in "effects" bargaining in preparation for the ter mination of the Mechanics' CBA. As with the drivers, Fleming agr eed to pay the mechanics for all of their earned but unused vacation benefits, personal days, and sick leave.

3

Fleming made the necessary lump sum payments to the drivers and mechanics on or before their last days of employment with the company, but Fleming never made any contributions to the Funds based on these payments. This dispute followed. On cross-motions for summary judgment, the District Court awarded summary judgment in favor of Fleming, and Einhorn appealed.

II.

As noted, Einhorn's action is based on Section 515 of ERISA, 29 U.S.C. S 1145, which provides that an employer "obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bar gained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the ter ms and conditions of . . . such agreement." Einhorn contends that the CBA's involved in this case unambiguously requir e Fleming to make contributions based on the lump sum payments given to the drivers and mechanics prior to the ter mination of their employment with that company. Fleming, by contrast, maintains that the CBA's unambiguously establish that it is not obligated to make such contributions.

Although federal law governs the construction of collective bargaining agreements, traditional contract principles apply when not inconsistent with federal labor law. See Teamsters Indus. Employees W elfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993); Sheet Metal Workers, Local 19 v. 2300 Gr oup, Inc., 949 F.2d 1274, 1284 (3d Cir. 1991). Under these principles, whether a contract term is clear or ambiguous is a question of law for the court and is thus subject to plenary r eview on appeal. See Teamsters Indus. Employees W elfare Fund, 989 F.2d at 135. "A [contract] ter m is ambiguous if it is susceptible to reasonable alternative interpretations." Sanford Inv. Co. v. Ahlstrom Mach. Holding, Inc., 198 F.3d 415, 421 (3d Cir. 1999); Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 521 (3d Cir. 1999). In determining whether a term is ambiguous, we must consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offer ed in support of

4

each interpretation. See Rolls-Royce, 989 F.2d at 135. Extrinsic evidence may include the structure of the contract, the bargaining history, and conduct of the parties that reflects their understanding of the contract's meaning. See id. Under our precedents, "[i]f the court determines that a given term in a contract is ambiguous, then the interpretation of that term is a question of fact for the trier of fact to resolve in light of the extrinsic evidence offered by the parties in support of their respective interpretations." Sanford Inv. Co., 198 F.3d at 421. See also, e.g., Newport Associates Dev. Co. v. Travelers Indem. Co. , 162 F.3d 789, 792 (3d Cir. 1998); Hullett v. Towers, Perrin, Forrester & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994).

III.

With these principles in mind, we consider the parties' sharply different interpretations of the relevant provisions of the CBA's. As previously noted, the CBA's pr ovide that contributions had to be made for each employee "for each day worked, or if not worked, paid for pursuant to the terms of [the CBA's] covering holidays, vacations and paid sick leave (not worked) to a maximum of eight (8) hours per day or forty (40) hours per week." The dispute here concerns the obligation to make a contribution"for each day . . . not worked [but] paid for [as holiday, vacation, or sick pay]."

Fleming interprets the phrase "day . . . not worked [but] paid for [as holiday, vacation, or sick pay]" in a concrete sense. In its view, the phrase refers to a calendar day during which a Fleming employee did not work but was paid. Fleming therefore concludes that the lump sum payments that it made to the drivers and mechanics at the end of their employment as compensation for their unused vacation benefits and sick leave did not trigger an obligation to make contributions to the funds because, once these employees ceased working for Fleming, no calendar days occurred during which they were on paid vacation or sick leave. Moreover, according to Fleming, the lump sum payments may not be allocated to the period prior to the expiration of the CBA's because that period has been used up, i.e., for all of those days, Fleming has alr eady made

5

contributions based on the maximum of eight hours per day and 40 hours per week. Fleming acknowledges that provisions in the CBA's required it to pay the drivers and the mechanics for their unused vacation benefits when they were permanently laid off,[2] but Fleming contends that these provisions do not address Fleming's separate obligation to make contributions to the funds. This obligation, Fleming asserts, is controlled entirely by the pr eviously noted provisions that tie the contribution obligation to calendar days during which the employee either worked or was out on paid vacation or sick leave.[3] Finally, Fleming takes the position that its "effects" agreement with the union was itself a collective bargaining agreement and that this agreement confirmed that Fleming's contributions would be subject to the limitations expressed in the main CBA's.

Einhorn offers an alternative interpretation of the CBAs' contribution provisions. Einhorn str enuously argues that the CBA's never say that the term "day" means calendar day. Under Einhorn's interpretation of that term, as we understand it, a "day . . . not worked [but] paid for [as holiday, vacation, or sick pay]" is essentially a unit of money, not time –– in other words, a day's pay. According to Einhorn, the eight–hour per–day and forty–hour–per week caps simply limit Fleming's contribution obligation if a day's pay was for more than eight hours or a week's pay was for more than 40 hours.[4]

Relying on the CBA provisions stating that Fleming was required to make contributions to the funds by the 28th day of the month "following the month in which those monies were accrued,"[5] Einhorn contends that the obligation to make contributions "accrued at the same

_____

2. App. 80 (Drivers' CBA, art., 22, sec. 4(b); App. 116 (Mechanics' CBA, art. 19.14).

3. App. 70, 84 (Drivers' CBA, art. 9, 25); App. 124–25 (Mechanics' CBA, art. 32, 33).

4. Einhorn provides this example. If an employee was on vacation for a week, the employee would be paid for 45 hours. Fleming, however, was required to make contributions based only 40 hours.

5. App. 69, 84 (Drivers' CBA art. 9, sec. 5; art. 25, sec. 6); App. 123, 126
(Mechanics' CBA para. 32.5, 33.5).

6

instant that the employee either worked or became entitled to vacation pay." Appellant's Br. at 7-9 (emphasis in original). Einhorn further notes (a) that under the CBA's an employee became "entitled to vacation pay""[u]pon permanent layoff "6 and (b) that the lump sum payments at issue here were made before the CBA's expired and the employees were terminated. Thus, as Einhorn interprets the CBA's, Fleming became obligated to pay the employees for unused vacation and sick "days" and in fact made such payments before the CBA's ended, and Fleming was consequently obligated to make the corresponding contributions to the funds. Finally, Einhorn contends that Fleming's prior practice was to make contributions when an employee was given a lump sum payment.

We conclude that the critical provisions of the CBA's are "susceptible of differing meanings." Teamsters Indus. Emp. Welfare Fund, 989 F.2d at 135. Turning first to Fleming's position, with which the District Court agreed, we believe that it is reasonable to interpret the phrase "day . . . not worked [but] paid for" to mean an actual day during which a Fleming employee did not work but was paid because he or she was on vacation or sick leave. Indeed, this is the most literal interpretation, and if it is accepted, Fleming is not obligated to make the disputed contributions. Although Einhorn relies on several other pr ovisions of the CBA's, none dictates a contrary result. Einhor n points to the provisions stating Fleming was requir ed to make contributions by the 28th day of the month following the month in which "the monies accrued."7 However, the phrase "monies accrued" may be read as r eferring to the payments "for day[s] worked, or if not worked, paid for," and if Fleming's interpretation of the latter phrase is accepted, the lump sum payments made at the end of the CBA's wer e not payments for "day[s] . . . not worked." Einhorn also relies on the provisions providing that employees became entitled to vacation "upon permanent layoff,"8 but this provision

_____

6. App.80 (Drivers' CBA, art., 22, sec. 4(b); App. 116 (Mechanics' CBA, art. 19.14).

7. App. 69, 84 (Drivers' CBA art. 9, sec. 5; art. 25, sec. 6); App. 123, 126
(Mechanics' CBA para. 32.5, 33.5).

8. App.80 (Drivers' CBA, art., 22, sec. 4(b); App. 116 (Mechanics' CBA, art. 19.14).

expressly refers only to Fleming's obligations to the employees, not to the funds.

Einhorn's interpretation of the phrase "day . . . not worked [but] paid for," although less concrete than Fleming's, is also consistent with accepted usage. Suppose that a person said, "After I was laid off by employer X, I began working for employer Y the next day, but X paid me for my unused vacation days." The meaning of the statement would be obvious -- the person did not actually take a vacation but was given the money that would have been paid if he or she had he taken a vacation -- and no one would think that the statement was linguistically peculiar. And if Einhorn's interpretation of this phrase is accepted, it appears that Fleming was obligated to make the disputed contributions. Applying Einhorn's interpretation, when the lump sum payments were made (while the CBA's were still in force), the employees were paid for a certain number of days not worked, and Fleming incurred an obligation to make corresponding contributions, an obligation that survived the termination of the CBA's. See Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 207 (1991).

We have considered all of the other evidence upon which the parties have relied, and we believe that the CBA's remain ambiguous and that there is a genuine issue of material fact that precludes the entry of summary judgment for either side. Accordingly, the decision of the District Court must be reversed, and the case must be remanded to the District Court for trial.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

8