

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-15-2009

# Amer Elec Components v. Agere Sys Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1832

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Amer Elec Components v. Agere Sys Inc" (2009). *2009 Decisions.* Paper 1186.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1186

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-1832

_____

AMERICAN ELECTRONIC COMPONENTS, INC.,
                                                            Appellant
v.

AGERE SYSTEMS, INC.

_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 06-cv-04288
District Judge:  Honorable Susan D. Wigenton

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 16, 2009

Before: McKEE, SMITH, and VAN ANTWERPEN, *Circuit Judges*

(Opinion filed: June 15, 2009)

_____

OPINION

_____

SMITH, J., *Circuit Judge*.

This appeal presents primarily a question of contract construction. American

Electronic Components, Inc. ("AECI") sued Agere Systems, Inc. ("Agere") for an alleged

breach of contract.  AECI claimed that it was due a commission on a sale of surplus

equipment that was owned by Agere. The District Court granted summary judgment on behalf of Agere. For the following reasons, we will affirm.

I.

Agere, a maker of communication chips and other telecommunications equipment, and AECI, an electronic parts distributer, entered into a three-year contract on January 1, 2001.[1] The non-exclusive contract identifies AECI as a technical sales representative for, among other things, the marketing and selling of Agere's surplus equipment. The contract provided that:

> [Agere] may have the need to sell surplus capital equipment, as designated by [Agere], to outside third parties. As used herein, "Surplus Capital Equipment" or "Equipment" includes various types of semiconductor manufacturing equipment and related sub assemblies. [Agere] shall determine what Equipment is Surplus. . . . [AECI] agrees to act as [Agere]'s technical sales representative in the marketing and selling of Equipment to third parties in accordance with the terms and conditions set forth in this agreement.

Although the contract does not define the term "designate," AECI employees testified in their depositions that the designation process often begins with general discussions, but that Agere eventually authorizes, in writing, AECI to sell particular equipment. The contract also provided that Agere may use other companies to sell its equipment, and both parties recognize that the contract allowed Agere to sell its own equipment.

---

[1] We note that the parties had a long-standing relationship prior to the 2001 contract.

As to AECI's remuneration,[2] the contract stated that: "[AECI] shall receive from [Agere] a percentage of the complete sale price for each item of Equipment sold to a third party by [AECI]."

The current dispute concerns whether Agere owes AECI a commission for the 2001 sale of surplus equipment from Agere's Madrid, Spain subsidiary ("Madrid equipment"). In June 2001, Chuck Novak, Agere's employee responsible for the disposition and sale of surplus equipment, informed AECI that the Madrid subsidiary was closing, and that he (Novak) would "be in charge of," "handle," and "spearhead" the sale of the subsidiary's surplus equipment. The parties dispute whether Novak told AECI to find buyers for the equipment or to merely inform him if anyone expressed an interest in the type of equipment being sold in Madrid. Nevertheless, Agere sent AECI spreadsheets that listed the Madrid equipment, and AECI employees traveled to Spain with Novak to inspect and make a videotape of the Madrid equipment. Agere never, however, provided written authorization for AECI to sell the Madrid equipment.

AECI subsequently referred to Agere potential purchasers for the Madrid equipment. One particular buyer was Advanced Technology Services, Inc. ("ATSI"). AG Semiconductor Limited ("AG"), however, ultimately purchased the Madrid equipment. There is some uncertainty regarding the relationship between AG and ATSI,

_____

[2] The contract also provides that, in certain situations, AECI can purchase the designated surplus equipment and then sell it to a third party. That provision is not at issue in this case.

3

and AECI maintains that ATSI was the actual buyer due to a partnership and/or investment relationship that it had with AG. AG's managing director and CFO, however, signed an affidavit stating that ATSI was not a partner of nor had an investment interest in AG. Further, there is no dispute that Agere alone handled the sale of the Madrid equipment to AG.

AECI nevertheless believes that it is owed a commission because: (1) it expended substantial time and effort to find a buyer for the Madrid equipment; or alternatively (2) Agere allegedly designated the Madrid equipment for AECI to sell and cut it out of the deal at the last minute. AECI thus filed a complaint for breach of contract and breach of the implied covenant of good faith and fair dealing in New Jersey state court. Agere properly removed the case to the United States District Court for the District of New Jersey, and after engaging in discovery, Agere moved for summary judgment. The District Court granted the motion, finding no genuine issue of material fact. The District Court determined that the contract required AECI to consummate the sale of the equipment to a third party in order to be eligible for a commission. Although AECI rendered assistance to Agere, it did not consummate the sale, and was thus not eligible for a commission. The District Court also determined that Agere did not designate the Madrid equipment for AECI to sell.

AECI appeals.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over orders granting summary judgment. Elliot & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 318 (3d Cir. 2006). We will affirm such orders if our review reveals that "'there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)). A material fact is one that would affect the outcome of the lawsuit, and a dispute is genuine if "evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Clark v. Modern Group Ltd., 9 F.3d 321, 326 (3d Cir. 1993).

Because the contract between Agere and AECI is written, we are bound by its terms, and our role is to "enforce [the contract] as written and not to make a better contract for either of the parties." Vanguard Telecomms., Inc. v. S. New England Tel. Co., 900 F.2d 645, 651 (3d Cir. 1990) (quoting *Klacik v. Kovacs*, 268 A.2d 305, 307 (N.J. Super. Ct. App. Div. 1970)) (internal quotation marks omitted).[3] Nevertheless, in determining whether any of the contract's terms are ambiguous, we may, in addition to reviewing the language of the contract, consider "the conduct of the parties that reflects their understanding of the contract's meaning." Teamsters Indus. Employees Welfare

---

[3] It is undisputed that New Jersey substantive law applies in this case. See Cooper Labs., Inc. v. Int'l Surplus Lines Ins. Co., 802 F.2d 667, 672 (3d Cir. 1986).

5

Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993).

As the District Court determined, the contract clearly sets forth when AECI is owed a commission: when AECI consummated a sale of equipment that was designated by Agere. Thus, only factual disputes bearing on issues embedded in that statement are material. No such disputes exist here.

AECI argues that summary judgment is not appropriate because the parties dispute whether: (1) Chuck Novak told AECI to "find a buyer" for the Madrid equipment; (2) AECI expended substantial effort to find a buyer for the equipment; and (3) AECI found the company that ultimately bought the equipment. That AECI concentrates on these disputes is unsurprising, as it claims that it acted as Agere's broker and is thus owed a commission for merely finding a buyer for the Madrid equipment. This argument is unavailing, as the contract specifically identifies AECI as a "technical sales representative" and limits AECI's entitlement to a commission to situations where it actually sold the designated equipment. Holding that the contract gave AECI a right to commissions for finding a buyer "would require us to enlarge our role from contract construction to contract reformation, a role we decline to assume under the facts of this case." Vanguard, 900 F.2d at 651-52. Thus, whether Chuck Novak told AECI to find a buyer, and whether AECI expended resources to—and did in fact—find a buyer for the Madrid equipment, are not material to whether AECI is owed a commission.

The record also supports the District Court's determination that Agere did not

6

designate the Madrid equipment for AECI to sell. AECI argues that Agere implicitly designated the equipment through its actions. The contract does not define "designate," but there is no dispute that it is Agere's practice to designate in writing its surplus equipment for AECI to sell. See Teamsters, 989 F.2d at 135 (stating that courts may look at course of performance to interpret a contract). AECI concedes that Agere did not "sign off" on the designation of the Madrid equipment for sale. It thus cannot be genuinely disputed that Agere did not designate the Madrid equipment.

Finally, there is not sufficient evidence for a reasonable jury to conclude that Agere should be required to pay AECI a commission because Agere improperly prevented AECI from fulfilling the contract's condition precedent—consummating the sale. AECI correctly asserts that a party may not escape contractual liability by relying on the failure of a condition precedent where the party wrongfully prevented the performance of that condition. See Creek Ranch, Inc. v. N.J. Tpk. Auth., 383 A.2d 110, 116 (N.J. 1978). The record does not support this conclusion here, especially as Agere never designated the Madrid equipment for AECI to sell, and because Chuck Novak of Agere told AECI that he would be handling the sale of the equipment. The facts that AECI located potential buyers for the Madrid equipment and that Agere eventually sold the equipment do not lead to the inference that Agere engaged in some sort of subterfuge to prevent AECI from earning a commission. Further, the non-exclusive contract allows

Agere to sell its own equipment.[4]

For the reasons stated above, we will affirm the District Court's order granting

summary judgment on behalf of Agere.

---

[4]      Based on the conclusions reached above, we also find that summary judgment was appropriate on AECI's claim for breach of the implied covenant of good faith and fair dealing.