IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

# FILED

May 26, 2020

TAMARA CHARLES
CLERK OF THE COURT

**SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

CLAIRMONT INVESTMENTS, LLC,

PLAINTIFF,

v.

MONTPELLIER HOLDING CO., LLC; AND JEFF
TEEL

DEFENDANTS.

SX-09-CV-417
Cite as: 2020 V.I. Super 061U

Appearances:[1]

Scot F. McChain, Esq.
*For Plaintiff*

H.A. Curt Otto, Esq.
*For Defendants*

## MEMORANDUM OPINION

**WILLOCKS, Presiding Judge**

¶1     **THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment (hereinafter "Plaintiff's Motion"), filed May 27, 2010. The Defendants filed an "Opposition to Motion for Summary Judgment and Cross-Motion for Summary Judgment" (hereinafter "Defendants' Opposition") on June 16, 2010. The Plaintiff responded with an Opposition to the Cross-Motion (hereinafter "Plaintiff's Opposition") on June 29, 2010 and a Reply to the Opposition to Motion for Summary Judgment (hereinafter "Plaintiff's Reply") on June 30, 2010. The last filing made in this matter was the Defendants' Reply to the Opposition to the Cross-Motion (hereinafter Defendants' Reply) on July 9, 2010.

## BACKGROUND

¶2     Clairmont Investments, LLC (hereinafter "Clairmont") states that Montpellier Holding Company LLC (hereinafter "Montpellier") borrowed $250,000 (two-hundred fifty thousand dollars)

---

[1] From the Court's records, it appears that both Attorney McChain and Attorney Otto have withdrawn from this matter. However, there is indication that the Plaintiff is represented by Attorney Mark Eckard.

from it on February 13, 2008 and executed a promissory note for repayment of the principal on February 12, 2009. (Mem. of Law to Mot. 1. *See* Inglehart Aff. ¶ 3.) The promissory note also included provisions requiring monthly installments of interest to commence on March 1, 2009, but these were allegedly set aside mutually by Clairmont and Montpellier in favor of a requirement for quarterly payments of 60% (sixty percent) of net rental revenue from Clairmont's property at the Residences at Villa Greenleaf (Unit 2E, the Clairmont Suite). (Mem. of Law. at 2. *See* Inglehart Aff. ¶¶ 6-7.) Clairmont states that the agreement for a share of rental income (hereinafter the "Revenue Agreement") was to remain in effect until full satisfaction of the promissory note and was to be secured by the exchange of a warranty deed to the Clairmont Suite at Residences at Villa Greenleaf. (Mem. of Law at 2.) The Revenue Agreement reads as follows:

The relevant text of the Revenue Agreement is as follows:

> By and between Montpellier Holding Col, LLC, Jeff Teel (MHC) and Clairmont Investments, LLC (CI). The parties agree to set aside the interest payment provision of a certain promissory note of the same date and replace it with the following:
>
> MHC will pay CI sixty percent (60%) of the net rental revenue of the Clairmont suite (Unite 2E) at the Residences at Villa Greenleaf. MHC will deduct normal operating expenses to include utilities, taxes, grounds and unit maintenance that are properly apportioned to that unit. Payments will be made on a quarterly basis along with a detail [sic] summary reconciliation.
>
> This agreement will be in effect until the payment of the promissory note of even date has been satisfied. It is the intent of the parties to satisfy the payment of such note with the exchange of a Warranty Deed to Unit 2E Clairmont Suite at the Residences at Villa Greenleaf at which time the note will be canceled.

¶3　　　Jeff Teel (hereinafter "Teel") executed a Guaranty of Payment of Performance on February 13, 2008 which promised the full and prompt payment of the amounts due under the promissory note. (*Id.* at 1. Inglehart Aff. ¶ 4.) "The Guaranty provides that [Teel] agreed to pay all costs and expenses which may be incurred by [Clairmont] in collection of the Guaranty, including, but not limited to, reasonable attorneys' fees and costs." (Mem. of Law at 4.)

¶4    According to Clairmont, Montpellier did not make any of its quarterly payments and never delivered a warranty deed to the Clairmont Suite. (*Id.* at 3.) Despite demands for payment, "[t]he indebtedness was not paid promptly, or at maturity on February 12, 2009, or otherwise, or at all...." (*Id. See* Inglehart Aff. ¶ 10.) On September 1, 2009, Clairmont notified Teel of Montpellier's default and demanded payment of the principal sum, plus interest, but was denied. (Mem. of Law. at 4.)

¶5    Clairmont argues that there are no genuine disputes that it is entitled to relief because the Revenue Agreement "clearly did not amend the due date of the Note or the repayment provisions, which require payment on February 12, 2009, of the principal sum of $250,000." (*Id.* at 6.) "Therefore, [Montpellier] and [Teel] are liable to [Clairmont] for the outstanding debt, unpaid net rental revenues, costs and fees associated with this matter." (*Id.* 6.)

¶6    Montpellier and Teel state that renting the Clairmont suite has produced no net rental revenue. (Opp'n 3.) The Defendants also allege that the Revenue Agreement is unambiguous that "[i]t allows for the continued payment of the promissory note by payment of net income from the [Clairmont suite] until there is an exchange of a warranty deed to Unit 2E Clairmont Suite at the Residences at Villa Greenleaf, at which time there would be cancellation of the note." (*Id.*) In other words, "the loan will be paid by exchange of the deed, thereby fully modifying the terms of the note." (*Id.* at 6, citation omitted).

¶7    As to the warranty deed, the Defendants state that "it has not been possible to obtain the financing to remove the two mortgages that underlie the property at issue." (*Id.* at 4.) They state that "Clairmont Investments, LLC was apprised of the mortgages, and understood full and well that there existed the underlying mortgages and that it would be necessary to obtain a release of that portion of the property relating to the proposed condominium unit, and without that, there could be no transfer." (*Id.*) The Defendants assert that Teel, working on behalf of Montpellier, is working in good faith to have the mortgages released, but the failure to make progress is not breach. (*Id.*)

¶8　　The Defendants also argue that summary judgment is inappropriate because discovery has not been conducted (or rather, had not been completed at the time the Plaintiff's Motion was filed), and discovery would assist the Court if it found the Revenue Agreement to be ambiguous. (*Id.* at 7.)

¶9　　In the Plaintiff's Opposition, Clairmont contests the Defendants' interpretation of the Revenue Agreement. According to Clairmont, the Defendants have asserted that the note will not be satisfied until the deed is exchanged and that the exchange constitutes payment of the loan, but Clairmont argues that the Revenue Agreement "does not contain either of these provisions as alleged by the Defendants." (Pl.'s Opp'n 4.) The language of the Revenue Agreement states that it replaces the provision that requires the payment of interest with payments of quarterly net rental revenue and does not amend the other contract terms, such as the maturity date of the note or the payment of the principal $250,000. (*Id.*) Clairmont's interpretation is that the promissory note would be satisfied if a warranty deed was provided, (*id*) which it has not.

¶10　　Clairmont also points out that the Defendants' interpretation is flawed because if true, "this would result in there being absolutely no maturity date for the Note and absolutely no requirement that the funds loaned by the Plaintiff would ever need to be repaid by the Defendants," which could not have been the intention. (*Id.* at 5, emphasis removed). Clairmont maintains that if it had been the parties' intent to fully modify the contract, such an intent would have been clearly stated in the Revenue Agreement. As support, Clairmont provides correspondence with Teel from after the maturity of the promissory note, wherein Teel requests an extension on the note and payments of one-thousand dollars each month and discusses the money owed to Clairmont. Clairmont alleges that these emails are proof that Teel was aware of his obligation to repay the note. (*Id.* at 5-6.)

¶11　　Clairmont further argues that this summary judgment can proceed without complete discovery because the contractual provisions are clear and unambiguous. (Pl.'s Reply at 1-2.) Additionally, Clairmont asserts that the only fact really disputed by Teel in his affidavit provided with the Defendants' Opposition is related to the amount of rental income. Clairmont concedes that this point

is not ready for summary judgment but notes that the affidavit did not otherwise dispute the facts

because the assertion that the terms of the contract were fully modified is conclusory. (*Id.* at 2-5.)

## STANDARD OF LAW

¶12    When parties enter into multiple written agreements relating to the same subject matter
as part of the same transaction, courts consider the meaning of each document and the
surrounding circumstances to determine the parties' intent. Contract interpretation, that
is, ascertaining the meaning of contractual language, involves mixed questions of law
and fact. If a contract is unambiguous, "the meaning of its terms is a question of law."
If, however, a contract is ambiguous and extrinsic evidence offered in support of
interpretation is disputed, the meaning of the contract's terms is a question of fact.

To determine whether a contract is ambiguous, we resort to principles of contract
interpretation, keeping in mind that our primary purpose is to ascertain and give effect
to the parties' objective intent.

*Phillip v. Marsh-Monsanto*, 66 V.I. 612, 624-25 (V.I. Sup. 2017) (citations and internal brackets
omitted).

¶13    A determination about ambiguity does not depend only on the clarity of the language used, but

also on extrinsic evidence in support of each party's interpretation. *White v. Spenceley Realty, LLC*,

53 V.I. 666 (V.I. 2010) (quoting *Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor*

*Cars, Inc.*, 989 F.2d 132, 135 (3d. Cir. 1993). Extrinsic evidence to be considered may include each

party's conduct if it indicates their understanding of the contract's meaning. *White*, 53 V.I. at 678

(citing *CAT Aircraft Leasing, Inc. v. Cessna Aircraft Co.*, 22 V.I. 442 (D.V.I. 1986). "Where the

language of a contract is clear and unambiguous, the parties' intent must be derived from the plain

meaning of its terms." *Phillip*, 66 V.I. at 625.

¶14    Further, the Court may grant summary judgment pursuant to Rule 56 of the Virgin Islands

Rules of Civil Procedure. V.I.R. Civ. P. 56. "Summary judgment is a 'drastic remedy,' [and] is only

appropriate where 'the pleadings, the discovery, and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law.'" *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 228 (Sup. Ct. 2013) (citing

*Williams v. United Corp.*, 50 V.I. 191, 194 (Sup. Ct. 2008).

## DISCUSSION

**1. There is no genuine dispute of fact that the Defendants are indebted to the Plaintiff $250,000 in principal, plus quarterly net revenue.**

¶15    In this case, the primary question is whether the Revenue Agreement is ambiguous. The Court has reviewed the language used in the Revenue Agreement and the parties' extrinsic conduct and now finds that it is unambiguous. The Revenue Agreement clearly evinces the parties' intent to "set aside the interest payment provision and replace it...." This statement is unambiguous, and the Court applies the plain meaning of the words: the Revenue Agreement modifies and replaces the provisions of the promissory note that required Montpellier to pay interest after the payment of the principal.

¶16    The Revenue Agreement then says that Montpellier "will pay sixty percent (60%) of the net rental revenue...." Here, the use of the word "will" plainly indicates a future obligation. Though historically the word "shall" has perhaps been more common in contract to denote a legal obligation, the use of the word "will" is not problematic. This is because the context of the sentence regarding payment of the net rental revenue supports the creation of an obligation, as does the Revenue Agreement's attachment to the promissory note.

¶17    The meaning of "net rental revenue" also requires only its plain meaning--whatever income is received after the subtraction of associated expenses. The parties have specified that this amount to be deducted is the "normal operating expenses," which is "utilities, taxes, grounds, and unit maintenance." The Court notes a distinction between the word "including," which would typically indicate a non-exhaustive list, and the parties' use of the phrase "to include," which--considered in context--indicates a closed list of specific items.

¶18    Furthermore, "[p]ayments will be made on a quarterly basis...." This means that the net rental revenue is to be paid to Clairmont four times per year, in a manner following the standard calendar quarters as widely understood in business and society. The parties then express a duration for the agreement to pay net rental revenue by stating that it "will be in effect until the payment of the

promissory note...has been satisfied." This means that quarterly payments will continue until the entire note is deemed satisfied within the meaning of the complete agreement

¶19     The parties also give meaning to the term "satisfied" in the remaining portion of the Revenue Agreement. It is their "intent...to satisfy the payment of such note with the exchange of a Warranty Deed...at which time the note will be canceled." Here, Montpellier has asserted that the provision means there is no requirement to pay the principal amount because the warranty deed is the new means of complete payment. Clairmont argues that the provision regarding payment of the principal remains unchanged. In order to make a proper determination regarding ambiguity, the Court has examined extrinsic evidence, including the parties conduct and concluded that there are no latent ambiguities.

¶20     In support of this determination is the fact that the Revenue Agreement clearly and unambiguously states that its scope is to replace the interest provision of the promissory note. Taking the contract as a whole, including the promissory note, it is possible that the parties intended to modify all the terms of payment by adding a clause to the Revenue Agreement, but this is very unlikely. The parties specifically stated that the interest provision of the note was being replaced but did not state that the other terms were being modified and did not otherwise indicate an intent to redraft the terms of the note. As Clairmont points out, those specifications could easily have been made if they were intended. Additionally, Montpellier's interpretation would mean that Clairmont might never be repaid in any form. This is especially true if, as the Defendants claim, the property is not producing any net rental revenue and they are continually unable to execute a warranty deed despite acting in good faith to do so. In considering the intent of the parties at the time of contracting, the Court doubts that Clairmont intended to give Montpellier $250,000 without assurance of repayment. That is, after all, the purpose of a promissory note. Moreover, Clairmont has provided exhibits indicating that Jeff Teel understands the note and Revenue Agreement to require payment of cash, as opposed to only the deed, to satisfy the Defendants' obligations.

¶21    In light of all the circumstances, the Court must find in favor Clairmont using the common sense and plainest interpretation of the Revenue Agreement. The warranty deed provision can only be interpreted to mean that, after the principal is repaid and/or in addition thereto, Clairmont is entitled to revenue payments (replacing the interest payments) until Montpellier gives Clairmont a warranty deed to the subject property. At the time the deed is given to Clairmont, Montpellier's obligation to pay rental revenue is extinguished because the note will be fully satisfied. To this end, there is no genuine dispute of fact that Clairmont is owed the principal due under the promissory note, plus quarterly payments of net rental revenue (minus normal operating expenses). The quarterly payments must continue until the deed is delivered.

## CONCLUSION

¶22    In sum, the materials on file demonstrate that there is no genuine dispute of fact that Clairmont Investments is owed $250,000 in principal under the promissory note executed by the Defendants. Clairmont is also entitled to quarterly net revenue payments from the rental of the Clairmont Suite, as stated in the Revenue Agreement, to continue until such time as the Defendants deliver a warranty deed to the property to Clairmont. The Court will grant summary judgment and award attorney fees to Clairmont. Accordingly, it is hereby:

**ORDERED** that Clairmont Investments, LLC's Motion for Summary Judgment is **GRANTED**. The Court will issue the judgment in a separate document

**DONE and so ORDERED this** 26th **day of May, 2020.**

**ATTEST:**
Tamara Charles                                    HAROLD W.L. WILLOCKS
Clerk of the Court                        **Presiding Judge of the Superior Court**

By:
Court Clerk Supervisor

Dated: 5/28/2020

## SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

CLAIRMONT INVESTMENTS, LLC,

PLAINTIFF,

V.

SX-09-CV-417

MONTPELLIER HOLDING COMPANY, LLC; AND JEFF TEEL,

DEFENDANTS.

## ORDER

**AND NOW**, in accordance with the Judgment of even date, it is hereby:

**ORDERED** that this case be **CLOSED**. The Court will retain jurisdiction over the matter for sixty (60) days to allow the parties to make any necessary filings.

**DONE and so ORDERED this** 26th **day of May, 2020.**

HAROLD W.L. WILLOCKS
**Presiding Judge of the Superior Court**

ATTEST:
Tamara Charles
Clerk of the Court

By:
Court Clerk Supervisor
Dated: 5/28/2020