[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15048

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 26, 2012
JOHN LEY
CLERK

D.C. Docket No. 9:07-cr-80021-KAM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KERRI L. KALEY,
BRIAN P. KALEY,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 26, 2012)

Before EDMONDSON and MARCUS, Circuit Judges, and FAWSETT,* District
Judge.

_____

* Honorable Patricia C. Fawsett, United States District Judge for the Middle District of
Florida, sitting by designation.

MARCUS, Circuit Judge:

In this interlocutory criminal appeal, Kerri L. Kaley and Brian P. Kaley challenge a district court's order denying their motion to vacate a pretrial protective order restraining their assets. This is the second time the case has come before us. In United States v. Kaley, 579 F.3d 1246 (11th Cir. 2009) ("Kaley I"), we reversed the district court's prior order which had concluded that the Kaleys were not entitled to a pretrial evidentiary hearing on their motion to vacate the protective order, and we remanded for further proceedings. On round two, the district court determined that the Kaleys were entitled to a pretrial, post-restraint hearing, but that the only question to be addressed at the hearing was whether the restrained assets were traceable to or involved in the conduct charged in the indictment. At the hearing, the Kaleys did not present any evidence regarding traceability, and the district court declined to set aside the protective order.

The Kaleys once again appeal, arguing that, in addition to traceability, they should have been allowed to challenge the factual foundation supporting the grand jury's probable cause determinations (the very validity of the underlying indictment) at a pretrial, post-restraint hearing. Because, as we see it, the defendants are not entitled to try the entire case twice, once before trial and then again before a judge and jury, we affirm the district court's order denying the

2

Kaleys' motion to vacate the protective order.

I.

In <u>Kaley I</u>, we summarized the basic facts and procedural history of the case in this way:

> In January 2005, Kerri Kaley, then a sales representative with Ethicon Endo-Surgery, was informed she was the target of a grand jury investigation in the Southern District of Florida.  Kaley was suspected of stealing prescription medical devices ("PMDs") from hospitals and then selling them on the black market. Kaley retained . . . counsel in the investigation.  Kaley's husband, Brian Kaley, who was also under investigation . . . retained a separate attorney . . . .  Together, the two attorneys informed the Kaleys that their legal fees to take the case through trial would be approximately $500,000.  To obtain funds to pay those fees, the Kaleys applied for and obtained a home equity line of credit of $500,000 on their residence and used the proceeds to buy a certificate of deposit ("CD").

> On February 6, 2007, the grand jury returned a seven-count indictment against the Kaleys.[FN1]  Count One charged a conspiracy to transport PMDs in interstate commerce while knowing them to have been stolen, in violation of 18 U.S.C. § 371.  Counts Two through Six charged five substantive [18 U.S.C.] § 2314 offenses, and Count Seven charged obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3). The indictment also sought criminal forfeiture of all property traceable to the § 2314 offenses, including the CD . . . .

> FN1: The indictment was also returned against Jennifer Gruenstrass, whose case has since been severed from the Kaleys'.

> On February 7, 2007, the Government moved the district court <u>ex parte</u> for a protective order restraining the Kaleys from transferring or otherwise disposing of the property listed in the forfeiture count, and a magistrate judge, concluding that the indictment established probable

3

cause that the property was "traceable to" the Kaleys' commission of the § 2314 offenses, granted the motion the same day. . . .

On March 5, 2007, the Kaleys moved the district court to vacate the February 7th protective order. They contended that the order prevented them from retaining counsel of their choice in violation of their Sixth Amendment right to the representation of counsel. A magistrate judge heard this motion too on April 6th and sustained the protective order; however, he limited the protective order's scope (insofar as it applied to the CD) to $140,000.

On April 10, 2007, the grand jury returned a superseding indictment. This indictment replicated the first seven counts of the first indictment and added an additional count -- a charge that the Kaleys had conspired to launder the proceeds of the § 2314 offenses, in violation of 18 U.S.C. § 1956(h). This indictment also sought the criminal forfeiture of the CD and the Kaleys' residence on the theory that those assets were "involved in" the Kaleys' commission of the § 1956(h) offense. On April 17th, the Kaleys renewed their motion to vacate the February 7th protective order (as amended by the order of April 6th), and expressly requested a pretrial, post-restraint evidentiary hearing.

The magistrate judge heard the motion on April 27th. He questioned whether the indictment alone provided probable cause to restrain the defendants' assets and ordered the prosecutor to submit an affidavit supporting probable cause. The prosecutor responded by filing, in secret and under seal, an affidavit executed by the FBI case agent.

On May 1, 2007, the magistrate judge issued two orders. In the first order, he found probable cause -- based on the indictment and the case agent's affidavit -- that the CD and the Kaleys' residence were "involved in" the violations of § 1956(h) and § 2314. In the second order, he amended the February 7th protective order to include within its scope the full value of the CD and the Kaleys' residence. On May 2nd, the magistrate judge issued a third order denying the Kaleys' motion to vacate the protective order and to hold a pretrial, post-restraint

evidentiary hearing. . . .

On May 7, 2007, the Kaleys appealed the magistrate judge's May 1st and 2nd orders to the district court. On June 25th, the district court affirmed the magistrate judge's issuance of the protective order . . . . The trial court also affirmed the magistrate judge's denial of a pretrial evidentiary hearing, concluding that postponing the hearing until the trial itself satisfied due process. On June 27, 2007, the Kaleys lodged [an] interlocutory appeal, challenging the district court's decision.

Kaley I, 579 F.3d at 1249-53 (footnotes omitted).

In Kaley I, this Court reversed the district court's denial of the Kaleys' request for an evidentiary hearing and remanded for further proceedings. We held that under controlling case precedent the district court was correct to apply the four factors enumerated in United States v. Bissell, 866 F.2d 1343 (11th Cir. 1989), to determine whether a pretrial, post-restraint hearing was required, but that the district court had erred in weighing those factors. Kaley I, 579 F.3d at 1256-57. We remanded the case for the district court to reweigh the Bissell factors in light of our ruling. Id. at 1260. On remand, the district court found that the Bissell factors favored holding an evidentiary hearing.

In pre-hearing memoranda, the Kaleys argued that the question for the district court to consider at the hearing was whether the government would be likely to prevail at trial. They asserted that the government would be unlikely to prevail because the theory underlying its prosecution was baseless and the

5

underlying facts could not support the charges. The Kaleys explained that they were accused of receiving unwanted prescription medical devices ("PMDs") from hospitals that previously had purchased them from Ethicon, Kerri Kaley's employer, and then reselling those PMDs themselves rather than returning them to Ethicon. According to the Kaleys, the government's theory of prosecution was that Kerri Kaley held the returned PMDs in a "constructive trust" for Ethicon, and so, by selling the PMDs, the Kaleys unlawfully converted Ethicon's property. The Kaleys contended that there could be no constructive trust because they did not owe any fiduciary duties to Ethicon, and because Ethicon had never asserted any property rights in the unwanted PMDs. The Kaleys also noted that the government had offered this constructive trust theory at the separate trial of a codefendant, Jennifer Gruenstrass, who was acquitted of all charges, and they asserted that this Court had rejected a similar theory of prosecution in United States v. Goodrich, 871 F.2d 1011 (11th Cir. 1989).

At an evidentiary hearing conducted on July 29, 2010, the district court heard arguments from the parties regarding the hearing's proper scope. The Kaleys explained that they were not contesting whether the restrained assets were traceable to or involved in the conduct charged in the indictment, but instead were taking the position that the protective order should be vacated because the

6

underlying facts did not support the charged crimes in the first place. The government responded that, in light of this Court's decisions in Bissell and Kaley I, it was not required to offer substantive evidence from its case against the Kaleys in order to establish the evidentiary foundation of the criminal charges, and that the only purpose of the hearing was to determine whether the restrained assets were traceable to or involved in the conduct charged in the indictment.[1]

On October 24, 2010, the district court issued an order denying the Kaleys' motion to vacate the protective order. Citing language taken from Bissell and Kaley I, the district court concluded that the only relevant inquiry at the hearing was whether the restrained assets were traceable to or involved in the alleged criminal conduct. Because the Kaleys did not attempt to challenge traceability in any way -- arguing only that the government's underlying case had no merit -- the district court denied their motion to vacate the protective order. On October 27, 2010, the Kaleys lodged this second interlocutory appeal from the district court's order.

---

[1] The Kaleys had previously acknowledged that if the district court were to agree with the government, then the district court would have no choice but to uphold the restraints on the Kaleys' assets.

7

II.

In Bissell, a panel of this Court laid out the factors that courts must weigh in determining whether an indicted defendant whose assets have been restrained pretrial is entitled to an evidentiary hearing. In Kaley I, we determined that the district court erred in weighing the Bissell factors. On remand, the district court reweighed the factors and determined that the Kaleys were entitled to a pretrial hearing. We are now called upon to address the nature and scope of that hearing. The district court concluded that the Kaleys could not challenge whether the alleged conduct actually supported the probable cause determination made by the grand jury. We agree.

We begin by emphasizing again that the Sixth Amendment right implicated here -- the qualified right to counsel of choice -- is a weighty concern. See, e.g., Powell v. State of Ala., 287 U.S. 45, 53 (1932) ("It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."). A pretrial restraining order may make unavailable assets that a criminal defendant needs to pay for his counsel of choice. As we recognized in Kaley I, this is a serious consequence for the defendant: "Being effectively shut out by the state from retaining the counsel of one's choice in a serious criminal case is a substantial source of prejudice . . . ."

Kaley I, 579 F.3d at 1258.[2]

Despite this weighty concern, the forfeiture statute at issue, 21 U.S.C. § 853, does not require a hearing for the issuance or continuation of a post-indictment restraining order. And the statute makes it abundantly clear that Congress knew how to provide for such a hearing if it had wanted to do so. Section 853(e) authorizes a court to restrain property that would be subject to criminal forfeiture upon conviction. 21 U.S.C. § 853(e). Under subparagraph (1)(B), to obtain such a restraining order before the filing of an indictment requires "notice to persons appearing to have an interest in the property and opportunity for a hearing." Id. § 853(e)(1)(B). But, in sharp contrast, subparagraph (1)(A), dealing with post-indictment restraining orders, contains no such requirement. See id. §

---

[2] The Supreme Court has made clear, however, that the right to counsel of choice does not include the right to use illegitimate, forfeitable assets to pay for counsel. Caplin & Drysdale v. United States, 491 U.S. 617, 626-32 (1989). As the Court explained:

> A robbery suspect, for example, has no Sixth Amendment right to use funds he has stolen from a bank to retain an attorney to defend him if he is apprehended. The money, though in his possession, is not rightfully his; the Government does not violate the Sixth Amendment if it seizes the robbery proceeds and refuses to permit the defendant to use them to pay for his defense.

Id. at 626. The more difficult issues are whether due process requires a hearing to maintain a pretrial restraining order on assets alleged but not yet proven to be forfeitable and, if so, what such a hearing would entail. The Supreme Court has not yet addressed these issues. See United States v. Monsanto, 491 U.S. 600, 615 & n.10 (1989) (holding that assets can be restrained pretrial "based on a finding of probable cause to believe that the assets are forfeitable," but noting that "[w]e do not consider today, however, whether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed").

853(e)(1)(A). Rather, it states that the court may enter a restraining order upon the filing of an indictment that alleges that the property would be subject to forfeiture in the event of conviction. Id.[3] The difference between these two subparagraphs unambiguously demonstrates that Congress contemplated the issue of a hearing, but decided not to require one post-indictment.[4]

Since the statute itself imposes no hearing requirement, the only pretrial hearing required is one provided under the Due Process Clause. In Bissell, this Court held that, when a restraint on the defendant's assets prevents him from retaining counsel of choice, due process requires a pretrial hearing if the four-factor balancing test enunciated in Barker v. Wingo, 407 U.S. 514 (1972), weighs

---

[3] Specifically, the statute provides in pertinent part:

Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section--

(A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section . . . .

21 U.S.C. § 853(e)(1)(A).

[4] The statute also provides for a pre-indictment temporary restraining order without a hearing if certain requirements are met, but it requires that, upon request, a hearing "shall be held at the earliest possible time." 21 U.S.C. § 853(e)(2). Thus, Congress was also aware that it could require a hearing after the entry of an ex parte restraining order, but it plainly declined to impose any such requirement for the continuation of post-indictment restraints.

10

in favor of a hearing.  <u>Bissell</u>, 866 F.2d at 1353.  The four <u>Bissell</u>/<u>Barker</u> factors are: "(1) the length of the delay before the defendants received their post-restraint hearing; (2) the reason for the delay; (3) the defendants' assertion of the right to such a hearing pretrial; and (4) the prejudice the defendants suffered due to the delay weighed against the strength of the United States's interest in the subject property."  <u>Kaley I</u>, 579 F.3d at 1254.

In this case, the Kaleys are entitled to a pretrial hearing under the <u>Bissell</u> test, as the district court ultimately concluded after our <u>Kaley I</u> remand.  The district court found that the first two factors weighed in favor of the government, because the projected delay until trial was short and the government had a substantial interest in not revealing its case before trial.[5]  But the third and fourth factors weighed in the Kaleys' favor and were enough to entitle the Kaleys to an evidentiary hearing.  As we explained in <u>Kaley I</u>, the third factor must weigh in the defendants' favor when they "have taken every available step to contest the restraints."  <u>Id</u>. at 1257-58.  And as for the fourth factor, although the government has a strong interest in restraining the property, it is outweighed by the significant prejudice the Kaleys would suffer without a hearing: the potentially wrongful

---

[5] In <u>Kaley I</u>, we held that the district court's determinations on these first two factors did not amount to an abuse of discretion.  579 F.3d at 1256.

deprivation of the resources needed to retain their counsel of choice.  The Kaleys were thus entitled to a pretrial, post-restraint hearing.

The question now before this Court is exactly what the hearing requires. Kaley I suggested that the defendants cannot challenge the underlying indictment itself.  Kaley I's holding that the district court had incorrectly applied the Bissell test was based on the district court's error in evaluating the third factor -- the defendants' assertion of the right to a pretrial hearing.  We explained:

> [I]n evaluating the third factor, the district court concluded that, under Bissell, once probable cause has been determined, the only way that a defendant can show that assets are not forfeitable is to establish that the crime charged in the indictment did not occur.  This, however, was not the holding of Bissell and could not have been the opinion's intent, because, as the district court correctly noted, a challenge to the indictment cannot be made pretrial.  A pretrial challenge to the indictment would require the district court to hold an evidentiary hearing to determine whether the crime occurred. . . .  In many cases, such a hearing would go so far as to render the trial on the merits of the criminal charge unnecessary. . . .  But the Bissell court undeniably contemplated some circumstances in which, despite the presence of probable cause, a pretrial hearing would be required.

> The principle of law Bissell advances is that, after weighing the four Barker factors, the district court may grant the defendant's request for a pretrial evidentiary hearing in order to determine whether assets described in the forfeiture count of the indictment were wrongly seized (or placed under the restraint of a protective order). . . .  The purpose of the hearing would not be to determine guilt or innocence but, rather, to determine the propriety of the seizure.  Moreover, in such a hearing, the defendant, as the movant, would have the burden of proof, and the prosecution would thus be saved from having to preview its entire case.

12

Id. at 1257-58. Kaley I concluded that the district court had erred in its analysis of the third Bissell factor because it misconstrued the nature of the hearing to which the Kaleys would be entitled. The district court had assumed that the only way to challenge the restraint was by conducting a global pretrial hearing challenging the factual sufficiency of the underlying indictment. Kaley I explained that, although such a challenge is not permissible, a more modest hearing addressing the "propriety of the seizure" would be lawful in an appropriate case. Id. at 1257.

Admittedly, because the issue before this Court in Kaley I was simply whether the Kaleys were entitled to some kind of hearing, we did not have occasion to discuss the hearing's exact nature and contours. That is the only issue raised by the Kaleys in this second appeal: whether the scope of the hearing is limited to the issue of traceability or instead permits the defendants to challenge both traceability and the grand jury's probable cause determinations for the charged offenses. To the extent that Kaley I did not settle the issue, we now hold that at a pretrial, post-restraint hearing required under the Bissell test, the petitioner may not challenge the evidentiary support for the underlying charges.

Several reasons counsel for this limitation on the scope of the hearing. In the first place, as we've noted, the statute itself does not provide for a hearing, and

13

to the extent that Congress contemplated a hearing, it determined that a defendant

should not be allowed to challenge the indictment itself.  The legislative history

surrounding the codification of 28 U.S.C. § 853(e) couldn't be clearer or more

unambiguous on the point:

> Paragraph (1)(A) provides that a restraining order may issue 'upon the filing of an indictment or information charging a violation . . . and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section.'  Thus, the probable cause established in the indictment or information is, in itself, to be a sufficient basis for issuance of a restraining order.  While the court may consider factors bearing on the reasonableness of the order sought, it is not to 'look behind' the indictment or require the government to produce additional evidence regarding the merits of the case . . . .
>
> In contrast to the pre-indictment restraining order authority set out in paragraph (1)(B), the post-indictment restraining order provision does not require prior notice and opportunity for a hearing. . . .  This provision does not exclude, however, the authority to hold a hearing subsequent to the initial entry of the order and the court may at that time modify the order or vacate an order that was clearly improper (e.g., where information presented at the hearing shows that the property restrained was not among the property named in the indictment).  However, <u>it is stressed that at such a hearing the court is not to entertain challenges to the validity of the indictment</u>.  For the purposes of issuing a restraining order, the probable cause established in the indictment or information is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based.

S. Rep. No. 98-225, at 168-69 (1983), <u>reprinted in</u> 1984 U.S.C.C.A.N. 3182, 3385-

86 (emphasis added).  It is not too much to say that allowing a challenge to the

14

factual underpinnings of the underlying charges at a pretrial, post-restraint hearing would be at war with this legislative history.

Moreover, this kind of pretrial challenge to the evidence supporting an indictment would be wholly inconsistent with the Supreme Court's repeated pronouncements in Costello v. United States, 350 U.S. 359 (1956), and its progeny. In these cases, the Court has shown a profound reluctance to allow pretrial challenges to a grand jury's probable cause determination. As the Court observed in Costello: "An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." Id. at 363. This holding has been repeatedly reaffirmed. See United States v. Williams, 504 U.S. 36, 54-55 (1992) ("Our words in Costello bear repeating: Review of facially valid indictments on [the] grounds [of inadequate evidence] 'would run counter to the whole history of the grand jury institution, and neither justice nor the concept of a fair trial requires it.'" (alterations omitted) (quoting Costello, 350 U.S. at 364)); Bank of Nova Scotia v. United States, 487 U.S. 250, 261 (1988) (explaining that a facially valid indictment is not subject to "a challenge to the reliability or competence of the evidence presented to the grand jury," because "a court may not look behind the indictment to determine if the evidence upon which it was based is

sufficient"); United States v. Calandra, 414 U.S. 338, 344-45 (1974) ("[T]he validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence . . . ."); Lawn v. United States, 355 U.S. 339, 349 (1958) ("[An] indictment returned by a legally constituted nonbiased grand jury, . . . if valid on its face, is enough to call for a trial of the charge on the merits and satisfies the requirements of the Fifth Amendment.").

In Costello, the defendant sought to challenge his facially valid indictment because it was not supported by competent evidence, inasmuch as the only evidence presented to the grand jury was in the form of hearsay. Costello, 350 U.S. at 361. The Supreme Court refused to allow the challenge. The Court observed that a rule allowing defendants to challenge indictments on the basis of inadequate or incompetent evidence "would run counter to the whole history of the grand jury institution," and "would result in interminable delay but add nothing to the assurance of a fair trial." Id. at 364. Under such a rule, "a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury," but, as the Court explained, "[t]his is not required by the Fifth Amendment." Id. at 363.

16

Subsequent case law clearly establishes that an otherwise valid indictment may not be invalidated even if the grand jury has considered evidence obtained in violation of a defendant's constitutional rights. Calandra, 414 U.S. at 351-52; Lawn, 355 U.S. at 349 (noting that a facially valid indictment is not subject to challenge on the ground that the grand jury relied on evidence obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination). In Calandra, the Supreme Court declined to extend the exclusionary rule to grand jury proceedings. 414 U.S. at 351-52. Thus, the grand jury's consideration of evidence obtained in violation of the Fourth Amendment does not invalidate an otherwise facially sufficient indictment. After discussing the historic role of the grand jury and its responsibility to make the probable cause determination, id. at 342-43, the Court reasoned that applying the exclusionary rule would "seriously impede" the role of the grand jury by "delay[ing] and disrupt[ing] grand jury proceedings," id. at 349. The Court explained that it was "disinclin[ed] to allow litigious interference with grand jury proceedings," observing that application of the exclusionary rule would "effectively transform[] them into preliminary trials on the merits." Id. at 350.

Similarly, the Court has held that an indictment cannot be invalidated based on the government's failure to present known exculpatory evidence to the grand

17

jury. Williams, 504 U.S. at 55. In Williams, the district court had dismissed the indictment, reasoning that the withheld exculpatory evidence "created a reasonable doubt about [the defendant's] guilt" and "thus rendered the grand jury's decision to indict gravely suspect." Id. at 39 (alterations and internal quotation marks omitted). But the Supreme Court squarely rejected this kind of "[j]udicial supervision of the quantity and quality of the evidence relied upon by the grand jury." Id. at 51. Since courts must "abstain from reviewing the evidentiary support for the grand jury's judgment" under Costello and its progeny, the Court reasoned that "[i]t would make little sense" to require courts to "scrutiniz[e] the sufficiency of the prosecutor's presentation." Id. at 54. Thus, so long as the grand jury finds that there is probable cause, the prosecutor's failure to present even "substantial" exculpatory evidence does not invalidate the indictment. See id. at 39.

Underlying all of these cases is the Supreme Court's recognition of the unique nature of the grand jury as an independent body, not an arm of the prosecution. See, e.g., Calandra, 414 U.S. at 343 (noting the grand jury's responsibility to protect citizens against "arbitrary and oppressive governmental action" in the form of "unfounded criminal prosecutions"); Costello, 350 U.S. at 362 (summarizing the historical independence of the grand jury). In Williams, the

18

Court explained that the grand jury "belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people." Williams, 504 U.S. at 47. As the Court had previously explained, the grand jury "serves the invaluable function in our society of standing between the accuser and the accused . . . to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will." Branzburg v. Hayes, 408 U.S. 665, 687 n.23 (1972) (alteration in original) (quoting Wood v. Georgia, 370 U.S. 375, 390 (1962)) (internal quotation marks omitted). Indeed, "[t]he very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." Stirone v. United States, 361 U.S. 212, 218 (1960).

In light of the important historical role of the grand jury as an independent accusatory body, Costello and its progeny evince a powerful reluctance to allow pretrial challenges to the evidentiary support for an indictment. Of course, a defendant may challenge an indictment on a variety of other grounds, including failure to state an offense, lack of jurisdiction, double jeopardy, improper composition of the grand jury, and certain types of prosecutorial misconduct. See Fed. R. Crim. P. 6(b) (allowing a defendant to move to dismiss the indictment on

the basis that the grand jury "was not lawfully drawn, summoned, or selected," or that an individual juror was not legally qualified); Fed. R. Crim. P. 12(b)(3)(B) (allowing a defendant to challenge an indictment for "fail[ure] to invoke the court's jurisdiction or to state an offense"); Bank of Nova Scotia, 487 U.S. at 257 (noting prior cases holding that racial or gender discrimination in the selection of grand jurors requires dismissal of the indictment); id. at 255-56 (holding that a district court may dismiss an indictment based on prosecutorial misconduct, but only if the defendant can show prejudice); United States v. Salman, 378 F.3d 1266, 1267 n.3 (11th Cir. 2004) (recognizing that "a district court may dismiss an indictment . . . when immunity, double jeopardy, or jurisdictional issues are implicated").

But under this long line of case authority, a defendant cannot challenge whether there is a sufficient evidentiary foundation to support the grand jury's probable cause determination. Yet that is exactly what the Kaleys propose to do at a pretrial hearing, laying out an elaborate theory that they cannot be charged with transporting stolen goods in interstate commerce because the goods (the prescription medical devices) were not stolen in the first place. In support of this claim, the Kaleys sought to introduce various pieces of evidence apparently never heard by the grand jury in an effort to convince the district court that the

20

government could not prove that the Kaleys had committed the charged offenses.[6]

In that sense, the Kaleys sought to do precisely what the Supreme Court prohibited in Williams: adduce additional evidence not presented to the grand jury in order to show that it would be unreasonable to find probable cause. In other words, the Kaleys presumably would have the district court consider all of the new evidence they had offered at their hearing and weigh it together with either the evidence previously presented to the grand jury or whatever evidence the prosecutor presented at the hearing, in order to determine whether there was probable cause to support the charges. In Williams, the Court rejected this kind of pretrial direct assault on the indictment. We, too, decline the defendants' invitation to lodge such a challenge to the grand jury's probable cause determination at a post-restraint due process hearing.

This case does fairly raise a Sixth Amendment issue, but we decline to resolve it in the manner proposed by the Kaleys. Due process does not require that a defendant be allowed to challenge at a pretrial, post-restraint hearing whether there is probable cause to believe that he committed the underlying offenses. This

---

[6] For the hearing, the Kaleys sought to introduce into evidence: policy manuals and other materials from Ethicon; a bill of particulars filed by the government in the Gruenstrass case; transcripts of the Gruenstrass trial; and the transcript of the sentencing hearing of Frank Tarsia, another alleged coconspirator.

kind of challenge would require the district court to review the grand jury's

probable cause determination, undermining the grand jury system and

contravening the Supreme Court's repeated observation that a facially valid

indictment "is enough to call for trial of the charge on the merits." Costello, 350

U.S. at 363.[7]  In the face of the Supreme Court's repeated admonitions against

allowing pretrial challenges to the evidence supporting a facially valid indictment,

the congressional design of the statute, and the undeniable fact that a defendant

may still fully confront the evidentiary support for the charge at trial, we conclude

that a defendant who is entitled to a pretrial due process hearing with respect to

restrained assets may challenge the nexus between those assets and the charged

---

[7] It is true that a prosecutor could theoretically still proceed to trial even after a defendant successfully challenged the restraint on his assets by attacking the sufficiency of the evidence purporting to show that he committed the crime for which forfeiture is sought.  A successful challenge at the post-restraint hearing would lead only to the removal of the restraint, not to the dismissal of the indictment itself.  But in practice, if the defendant has successfully challenged the restraint by undermining the evidentiary support for the indictment, it is quite unlikely that the prosecutor would proceed to trial.  In some cases, the prosecution might have additional evidence to present at trial -- if, for instance, it decided not to disclose crucial evidence at the pretrial, post-restraint hearing.  But if the government has disclosed the guts of its case, it is hard to see how the prosecutor could proceed to trial after the district judge has already determined that there is insufficient evidence to support the underlying charges.  In fact, proceeding to trial under such circumstances might implicate ethical constraints imposed on the prosecutor.  See, e.g., Town of Newton v. Rumery, 480 U.S. 386, 409 (1987) (Stevens, J., dissenting) (noting that a prosecutor "is ethically obligated . . . to drop charges when he believes that probable cause as established by the available, admissible evidence is lacking"); see also Ala. Rules of Prof'l Conduct, Rule 3.8(1)(a) ("The prosecutor in a criminal case shall . . . refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause . . . ."); Fla. Rules of Prof'l Conduct, Rule 4-3.8(a) (same); Ga. Rules of Prof'l Conduct, Rule 3.8(a) (same).

22

crime, but not the sufficiency of the evidence supporting the underlying charge. Accord United States v. Jones, 160 F.3d 641, 648 (10th Cir. 1998) ("The district court must take those allegations of the indictment as true and assume at the [pretrial, post-restraint] hearing that the underlying offense has been committed.").

It's worth emphasizing that the prosecution cannot unilaterally restrain a defendant's assets between the time of indictment and trial. In the first place, a prosecutor may seek a pretrial restraint only because Congress has specifically authorized the government to proceed in this manner. See 21 U.S.C. § 853(e). To effect a pretrial restraint, the prosecution must obtain a restraining order from a court. Id. § 853(e)(1). And the restraining order will issue only if a lawfully constituted grand jury has found probable cause that the assets would be subject to forfeiture upon conviction. Id. § 853(e)(1)(A). Without the grand jury's probable cause determination and the court's approval, the prosecution is not free to restrain anything.

It's also worth remembering that a defendant whose assets have been restrained will ultimately receive a thorough hearing -- the trial itself -- that goes to the merits of the underlying charge. And at that trial, the defendant will have counsel (appointed, if necessary), and the right to confront and cross examine witnesses, and to present evidence and call witnesses in his own defense. The

23

question is simply whether the Due Process Clause requires that the defendant get two such hearings. We conclude that the answer is no. To rule otherwise would effectively require the district court to try the case twice. See Kaley I, 579 F.3d at 1257 ("A pretrial challenge to the indictment would require the district court to hold an evidentiary hearing to determine whether the crime occurred. . . . In many cases, such a hearing would go so far as to render the trial on the merits of the criminal charge unnecessary."). Again, at their post-restraint hearing, the Kaleys sought to argue that their actions did not constitute a crime because Ethicon did not have any ownership interest in the allegedly converted PMDs. This very fact-specific inquiry would amount to a mini-trial on the merits. But this is precisely the kind of mini-trial that concerned the Supreme Court in Costello and Calandra. See Calandra, 414 U.S. at 350 (explaining that to apply the exclusionary rule in grand jury proceedings would "effectively transform[] them into preliminary trials on the merits," and that "[i]n some cases the delay might be fatal to the enforcement of the criminal law"); Costello, 350 U.S. at 363 (noting that if the Court adopted the defendant's proposed rule, "a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury," creating long delays). Simply put, the Kaleys are not entitled to try this case twice -- once before trial, and then again in the main act

24

before judge and jury.[8]

We add that allowing a defendant to convert a post-restraint hearing into a mini-trial on the merits would often interfere with the real interest expressly recognized by Congress in the pretrial preservation of assets. The legislative history surrounding the statute reveals that 21 U.S.C. § 853(e) was intended to avoid just such a result. As the Senate Report explained:

> Although current law does authorize the issuance of restraining orders in the post-indictment period, neither . . . statute articulates any standard for the issuance of these orders. Certain recent court decisions have required the government to meet essentially the same stringent standard that applies to the issuance of temporary restraining orders in the context of civil litigation . . . . In effect, such decisions allow the courts to entertain challenges to the validity of the indictment, and require the government to prove the merits of the underlying criminal case and forfeiture counts and put on its witnesses well in advance of trial in order to obtain an order restraining the defendant's transfer of property alleged to be forfeitable in the indictment. Meeting such requirements can make obtaining a restraining order -- the sole means available to the government to assure the availability of assets after conviction -- quite difficult. In addition, these requirements may make pursuing a restraining order inadvisable from the prosecutor's point of view because of the potential for damaging premature disclosure of the government's case and trial strategy and for jeopardizing the safety of witnesses and victims . . . who would be required to testify at the

---

[8] The Kaleys' proposed rule would also lead to an anomalous result: defendants with assets that the government seeks to restrain would get a chance to attack the validity of the indictment before trial, but defendants without such assets would not, no matter how severe the potential implications for their liberty interests. It would be odd indeed to conclude that a charge supported by a grand jury's probable cause determination requires additional proof at a collateral hearing when assets are restrained, but that a defendant without any assets gets no opportunity for a similar sneak preview of the government's case, even if he faces capital charges.

25

restraining order hearing.

S. Rep. No. 98-225, at 162, 1984 U.S.C.C.A.N. at 3378-79 (footnote omitted). This legislative history is persuasive. Cf. United States v. Moya-Gomez, 860 F.2d 706, 729 (7th Cir. 1988) (quoting this same passage and noting that "[t]hese considerations, the product of a careful and deliberate judgment of Congress[,] . . . require our careful and respectful acceptance"); United States v. Monsanto, 924 F.2d 1186, 1206 (2d Cir. 1991) (en banc) (Cardamone, J., dissenting) ("The prosecution's ability to prepare its case without being forced to 'tip its hand' prematurely was of paramount importance to the drafters and provides a persuasive reason for delaying a full adversarial hearing on the merits of the government's case during the post-restraint, pretrial period.").

At least one of our sister circuits, however, has concluded that allowing such a challenge imposes no real burden on the government, because the United States may always choose to forgo the pretrial restraint. The Second Circuit has suggested that "the hearing . . . is not being forced upon the government," and that "[i]f the government determines in any case that an adversary hearing in advance of a criminal trial is inadvisable, it always has the option of forgoing the restraint and obtaining forfeiture after conviction." Monsanto, 924 F.2d at 1198 (majority opinion). But this does not resolve the issue. Rather, it just shapes the dilemma

26

the government would face.

To force the United States to choose between prematurely revealing its evidence in support of charges a grand jury has already found by probable cause and forgoing altogether a congressionally created right to seek a pretrial restraint would impose a powerful burden on its interest -- a burden neither imposed nor intended by Congress. In fact, Congress provided for pretrial restraints on forfeitable assets precisely because postconviction forfeiture alone was thought to be inadequate. As the legislative history surrounding the codification of 21 U.S.C. § 853(e) explains, criminal forfeiture is important because it can remove the economic incentives for crime and strip criminals of their ill-gotten gains. S. Rep. No. 98-225, at 158, 1984 U.S.C.C.A.N. at 3374. But, as the Senate Report observed, defendants can easily "defeat[] forfeiture by removing, transferring, or concealing their assets prior to conviction." Id. at 162, 1984 U.S.C.C.A.N. at 3378. Thus, Congress concluded that pretrial restraining orders may be necessary "to guard against [the] improper disposition of forfeitable assets." Id. at 160, 1984 U.S.C.C.A.N. at 3377; see also id. at 162, 1984 U.S.C.C.A.N. at 3378 (explaining that, without a pretrial restraining order, a defendant subject to postconviction forfeiture "has not only an obvious incentive, but also ample opportunity, to transfer his assets or remove them from the jurisdiction of the court prior to trial").

By our count, at least three of our sister circuits have reached the same conclusion we reach. The Tenth, Sixth, and Seventh Circuits have all held that a defendant at a pretrial, post-restraint hearing may challenge only the connection between the restrained assets and the alleged criminal activity. Jones, 160 F.3d at 647-48 (holding that due process requires a pretrial hearing at which "the government must establish probable cause to believe that the restrained assets are traceable to the underlying offense," but need not "reestablish probable cause to believe that [the] defendants are guilty of the underlying . . . offense"); United States v. Jamieson, 427 F.3d 394, 406-07 (6th Cir. 2005) (determining that the district court did not err in applying the Jones framework); Moya-Gomez, 860 F.2d at 728-31 (requiring a post-restraint hearing "at which the government is required to prove the likelihood that the restrained assets are subject to forfeiture," but holding, based on the legislative history, that "the court may not inquire as to the validity of the indictment and must accept that 'the probable cause established in the indictment or information is . . . determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based'"). As the Tenth Circuit explained, allowing a defendant at a pretrial, post-restraint hearing to challenge the grand jury's probable cause finding for the underlying offense would "do[] more damage than necessary to section 853(e)(1)(A) and the role of

28

the grand jury." Jones, 160 F.3d at 648 (citing Costello, 350 U.S. at 363-64).[9]

In short, the Kaleys' motion to vacate the protective order on their assets was properly denied. We agree with the district court that a defendant may not challenge the evidentiary support for the underlying charge at a hearing to determine the propriety of a post-indictment pretrial restraining order. Having declined to present any evidence about whether the restrained assets were traceable to or involved in the charged conduct, the Kaleys failed to show that the restraint on their assets was improper.

---

[9] The Third and Eighth Circuits have held otherwise, concluding that a court must hold a full hearing at which "the government must demonstrate that it is likely to convince a jury, beyond a reasonable doubt, . . . that the defendant is guilty of [the statutory violation] and . . . that the profits or properties at issue are subject to forfeiture." United States v. Long, 654 F.2d 911, 915 (3d Cir. 1981); United States v. Lewis, 759 F.2d 1316, 1324 (8th Cir. 1985) (following Long). However, these cases involve an old pretrial restraint provision, which was replaced by 21 U.S.C. § 853(e). See Comprehensive Forfeiture Act of 1984, Pub. L. No. 98-473, §§ 303, 305, 98 Stat. 2040, 2044-50 (1984) (adding 21 U.S.C. § 853 and striking out what had been subsection (d) of 21 U.S.C. § 848). It is unclear whether the Third and Eighth Circuits would impose the same standard today, especially given that the Supreme Court has since held that pretrial restraints can be based on a finding of probable cause. See Monsanto, 491 U.S. at 615. Indeed, the Third Circuit, albeit in an unpublished opinion, has more recently adopted the Tenth Circuit's analysis in Jones, concluding that "[t]he post-restraint inquiry at the adversarial hearing is limited to the traceability of the restrained assets, and, thus, the government need not reestablish probable cause to believe that defendants are guilty of the underlying offense." United States v. Yusuf, 199 F. App'x 127, 132-33 (3d Cir. 2006) (citing Jones, 160 F.3d at 648).

The D.C. and Ninth Circuits, like the Second Circuit in Monsanto, have held that the post-restraint hearing must address whether there is probable cause to believe that the defendant is guilty of the crime that makes the assets forfeitable. United States v. E-Gold, Ltd., 521 F.3d 411, 419 (D.C. Cir. 2008); United States v. Roth, 912 F.2d 1131, 1134 (9th Cir. 1990).

**AFFIRMED.**

Edmondson, Circuit Judge, concurring in the result:

I concur in today's result. I concur because I cannot say with strong confidence that my colleagues on the panel are incorrect in the way they see the law working. But I concur with deep doubts. And if I were deciding the case alone, I expect I would reach a different result and write something largely in line with *United States v. Monsanto*, 924 F.2d 1186 (2d Cir. 1991) (en banc), and *United States v. E-Gold, Ltd.*, 521 F.3d 411 (D.C. Cir. 2008).

In a case like this one, the use of a pretrial restraining order to freeze a defendant's property is an entirely discretionary function, dependent on a decision initially made by the Executive Branch's prosecutors. Congress has not commanded that such restraints be used in this kind of criminal case. Congress has merely given its permission to prosecutors to use the tool of pretrial restraints on property.

By its letter, the statute that applies in this case requires no adversarial hearing in the present circumstances. But this Court -- correctly, I believe -- has earlier decided that the Constitution (the combination of the Fifth Amendment and Sixth Amendment) does require some kind of pretrial evidentiary hearing. This appeal presents the question of how broad a hearing is required by the Constitution. This question is important, and one on which the circuits are split.

31

The Supreme Court has never considered the question presented in this appeal.

By freezing a citizen's property at a time when he is presumed innocent of crime, the citizen (and, as a practical matter, his family and perhaps others) is subjected to severe hardship. The hardship includes in this case the inability to employ counsel of Defendants' choice to defend them in court from the mighty power of the federal government in a criminal proceeding. In the criminal proceeding ultimately, both their liberty and their property will be at stake. The chips are down.

In this criminal prosecution, the government is the aggressor. The government initiates the criminal action by bringing charges. The Executive Branch's prosecutors are in the driver's seat, choosing the nature and number of the charges to be brought and here choosing, in addition, to restrain the accused citizens' property before trial. This later step is something extra, beyond ordinary prosecution; and in this case, the step is said to disable Defendants, in fact, from employing counsel to defend themselves.

That this add-on to ordinary prosecution -- in effect, the seizure of property in advance of trial -- would trigger extra and significant procedural safeguards for the citizen and his property is in no way odd to me. And by a probable cause hearing following the seizure, I do not understand the government to be forced to

do anything, much less to try its criminal case twice. The government can simply choose to release the property. If the government does not wish to release the property, an evidentiary hearing should be conducted about probable cause on both the predicate criminal offense <u>and</u> the forfeitability (traceability of assets to supposed crime) of the specified property. At that hearing, the government can decide for itself precisely how much evidence it wishes to present about the criminal offense. If the government does not wish to reveal certain evidence before trial, the government can rightly withhold that evidence.

To ask the government to respond to a challenge on probable cause that the charged crime actually occurred is not to place on the government a heavy burden; everything needed for a conviction at trial is most likely not needed for probable cause. But, in any event, the government can decide for itself what cards to show before the actual trial; the worst that will happen is that the pretrial restraint on property will not continue. The criminal trial still looms ahead.

For the government to participate in an adversary hearing after seizure and before trial is inconvenient, of course. But the government's inconvenience ought not to determine the outcome of this kind of case. The government takes this inconvenience upon itself by making its own choice about how it will proceed in a criminal case. At the outset, the choice to go for pretrial restraint is the

prosecutors' to make. Before deciding to employ a strategy that includes a pretrial restraint on a defendant's property, the prosecutors can weigh (1) the extra time and trouble associated with an evidentiary pretrial hearing to keep up the restraint on a defendant's property against (2) the benefit (as the prosecutors see it) to the country that would flow from prohibiting the defendant from using his property before trial. Cost-benefit choices are a necessary and normal part of life, including litigation.

Furthermore, the outcome of the ultimate trial itself need not be jeopardized by a probable cause hearing; if the government thinks that it is best to keep some evidence secret until the actual trial, the government can keep it secret. Moreover, the probable cause hearing very possibly can be tailored by the presiding judge in such a way as to make the hearing be significantly different from any kind of criminal trial.[1] Besides, even if the government loses at the probable cause hearing, all the property itself might not ultimately be lost to the government -- if a

---

[1]This tailoring of the evidentiary hearing functions not just to protect evidence for trial. "In such an adversary hearing, the court could use limitations on the disclosure of evidence, such as *in camera* hearings and appropriate application of the normal rules of evidence to protect the grand jury proceedings against unwarranted invasion." *United States. v. E-Gold, Ltd.*, 521 F.3d 411, 419 (D.C. Cir. 2008); see also *United States v. Monsanto*, 924 F.2d 1186, 1198 (2d Cir. 1991) (en banc) (Fed.R.Evid. do not apply to hearings on whether a pretrial restraint on property can continue).

conviction is later actually obtained at the criminal trial.[2]

The Constitution's Bill of Rights, including the Fifth and Sixth Amendments, was intended by the Framers to protect citizens from the high power of the federal government. The Constitution is to guarantee each citizen a fair deal when the federal government takes aim at him. More specifically about property, we ought to bear in mind this fact: "<u>Liberty, property, and no stamps!</u> It had been the first slogan of the American Revolution." Catherine Drinker Bowen, *Miracle at Philadelphia: The Story of the Constitutional Convention May to September 1787*, at 70 (1966). Property rights, in themselves, deserve to be amply guarded by American courts. But when a citizen's liberty (as in the present case) depends to a high degree on his property, the stakes are particularly high.

For the Federal Executive, in effect, to seize a citizen's property; to deprive him thereby of the best means to defend himself in a criminal case; and then, by means of the criminal case, to take his liberty strikes me as a set of circumstances about which our nation's history and its Constitution demands that the process at each step be fully fair. The potential for the dominating power of the Executive

---

[2]The government retains the option of obtaining forfeiture of property after the government obtains a conviction. Forfeitable property in the hands of transferees commonly is recoverable by the government. I put aside the question of whether money paid to defense counsel as reasonable fees could be recovered, in a case like this one.

Branch to be misused by the arbitrary acts of prosecutors is real. The courts must be alert. To hear from the other side at a time when it matters (in this instance, before the criminal trial: a trial without counsel of Defendants' choice) is the basic and traditional way that American judges assure things are fair. So, I do think that *Monsanto* and *E-Gold*, as law decisions, are very possibly on the right tack: stressing judicial responsibility and requiring a broader hearing to keep up a pretrial restraint on property when the restraint interferes with a citizen's abilities to employ legal counsel of his choice to defend him in a criminal proceeding.

Like many appellate judges (probably most), I do not write separately or dissent every time that I find myself in disagreement with the majority of the judges on a case upon which we are working: almost always, the majority has taken a hard look at the case; and their position (in my view) is a reasonable one; and the resulting precedent will make an impression on the body of law that will be neither deep nor wide. I stop to write separately today because the case touches on the fundamentals and, thus, impresses me as being unusually important.

I am satisfied that the panel of judges of which I am a part has genuinely and seriously studied this case. Judge Marcus has written a thoughtful opinion in which Judge Fawsett has fully concurred. I have voiced my doubts, but I cannot firmly conclude that the legal position my experienced, able colleagues have taken

is definitely erroneous.  Therefore, I do not dissent, although I am uneasy that the limits that we set today for the hearing essential to continue a pretrial restraint on property might well be too limiting under the Constitution.